408 P.2d 468

**Clarence E. NAGEL, Plaintiff-Respondent,**

**v.**

**Marion HAMMOND and Marion Hammond, Guardian ad litem for Jack Hammond, a minor, Defendants-Appellants.**

**Marion HAMMOND and Marion Hammond, Guardian ad litem for Jack Hammond, a minor, Cross-Plaintiffs and Counter-Defendants-Appellants,**

**v.**

**Clarence E. NAGEL and Swift and Company, Cross-Defendants and Counter-Claimants-Respondents.**

**No. 9616.**

Supreme Court of Idaho.

Dec. 7, 1965.

Rehearing Denied Dec. 21, 1965.

98

Elam, Burke, Jeppesen & Evans, Boise, for appellants.

Smith & Miller, Caldwell, Hawley, Troxell, Ennis & Hawley, Boise, for respondents.

KNUDSON, Justice.

The damages sought by plaintiff-respondent, Clarence E. Nagel, resulted from a collision which occurred at the intersection of 4th and Blaine Streets, in Caldwell, Idaho, at about 2:30 p. m. on July 11, 1963. The plaintiff was at that time an employee of counterclaimant, Swift and Company, and was driving his employer's truck south on 4th Street when it collided with an automobile being driven by defendant, Jack Hammond, who was driving east on Blaine Street. Visibility was good. Except for a house located approximately 56 feet back from the intersection on plaintiff's right there was nothing to obstruct the respective drivers' view of each other as they approached the intersection. A verdict was returned in favor of plaintiff for $15,935.-

00 and in favor of Swift and Company in the sum of $1,722.00. Judgment upon the verdict was thereafter entered. This appeal is from said judgment and an order denying defendant's motion for a new trial.

■■■ Defendants contend that the trial court improperly instructed the jury by giving the following quoted instruction:

"No. 21.

"If you should find that the defendant approached the intersection at an unlawful or dangerous rate of speed or failed to drive at an appropriate reduced speed when approaching the intersection, the defendant did thereupon forfeit the right of way which he might otherwise have had by virtue of his being on the right of the plaintiff."

It is defendants' contention that this instruction carries an implication that the right of way passed to the plaintiff and absolved him from any duty to look for approaching automobiles. It is not pointed out by defendants just what language in the instruction would, when read by a person of ordinary understanding, leave such implication. This court has repeatedly stated that words and phrases of a statute must be given their usual, plain and ordinary meaning. I.C. § 73-113. Words that are in common use among the people should be given the same meaning in a statute as they have among the great mass

of people who are expected to read, obey and uphold them. City of Lewiston v. Mathewson, 78 Idaho 347, 303 P.2d 680; Striebeck v. Employment Security Agency, 83 Idaho 531, 366 P.2d 589. The word "forfeit" is in common usage and its popular and accepted meaning is "to lose" or "to lose the right to." It would be applying a strange and unusual construction on the word to say that it means or implies a transfer.

Preceding the giving of this instruction the court gave the following quoted instruction No. 17, to-wit:

"Section 49-727 of the Idaho Code provides as follows:

" '(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.'

" '(b) When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. * * *'

"You are instructed that two vehicles are to be considered as entering an intersection at approximately the same time when they approach so nearly at the same time that there would be imminent hazard of a collision if both

continued the same course at the same speed."

Most of said instruction No. 17 is quoted from I.C. § 49-727 and is stated in plain and unambiguous language which laymen are readily able to comprehend. In Mendenhall v. MacGregor Triangle Company, 83 Idaho 145, 358 P.2d 860, this court had under consideration an instruction which contained only subsections (a) and (b) of I.C. § 49-727 without any explanatory language, and we held that "the giving of this instruction was proper in explaining the statutory duty of drivers approaching an intersection." The explanatory language contained in instruction No. 17 regarding the phrase "at approximately the same time" correctly states the law. Coughran v. Hickox, 82 Idaho 18, 348 P.2d 724. In keeping with uniform practice this jury was instructed to consider the instructions as a whole and we do not agree that the giving of instruction No. 21, under the circumstances of this case, was in any respect prejudicial to defendants.

Defendants contend that the court erred in denying their motion for an involuntary dismissal based upon plaintiff's failure to prove that defendant Jack Hammond was negligent or that such negligence was the proximate cause of the collision and also that plaintiff's testimony showed that

he was guilty of contributory negligence as a matter of law.

We do not agree with the contention that plaintiff failed to introduce evidence of defendant Jack Hammond's negligence. It was stipulated that on the day this accident occurred the speed limit at the intersection involved, as fixed by the City of Caldwell, was 20 miles per hour. Plaintiff's testimony that he entered the uncontrolled intersection at a speed of between 5 and 15 miles per hour is unchallenged. The investigating officer testified that defendant Hammond stated to him that he, defendant, was driving at about 25 or 30 miles per hour when entering the intersection. Plaintiff's proof shows that the collision occurred just south of the center of the intersection; that the panel truck had been struck at about the middle of its right side, which was completely bent in, including the frame and doors; there were dents on the top and all the way around the vehicle and all glass broken out. The truck landed on its left side against the curb at the southeast corner of the intersection. Such evidence is sufficient to establish negligence on the part of the defendant.

In support of defendants' contention that plaintiff's testimony showed that he was guilty of contributory negligence as a matter of law, it is argued that plaintiff's failure to see defendant's automobile approaching the intersection established such

negligence. Plaintiff testified that he did not see defendant's car although he looked to his right and left upon entering the intersection and he did not recall that anything obstructed his view.

■ Although defendant stated that he has no recollection of facts after he reached the middle of the block between 3rd and 4th Streets, he now contends that plaintiff should have seen him and yielded the right of way. Just where defendant was at the time plaintiff entered the intersection was not established by anyone. This is one of the facts which must be determined by the trier of fact.

■ Under the facts of this case plaintiff cannot be adjudged guilty of contributory negligence merely because he did not see defendant when he entered the intersection. Plaintiff's conduct is to be determined by its conformity to or departure from what an ordinarily prudent person would have done under all the circumstances and conditions then existing.

In Stowers v. Union Pac. R. Co., 72 Idaho 87, 237 P.2d 1041, this court stated that:

"Through a long and unbroken line of decisions this court has held that where the evidence on material facts is conflicting, or where on undisputed facts reasonable and fairminded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, the question of negligence, contributory negligence and proximate cause is one of fact to be submitted to the jury and not a question of law for the court; if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable men differing, the question is one for the jury. [Citing many cases.]"

In the case at bar the evidence clearly shows that plaintiff had proceeded slightly more than one-half the width of the intersection and was in the south one-half of Blaine Street before being struck. Each of the intersecting streets are approximately 40 feet in width.

The record is convincing that different conclusions might be reached by different minds as concerns the speed at which defendant was traveling immediately prior to the accident. The uncontradicted evidence discloses that within a few hours after the accident the investigating police officer, Dean L. Franklin, had a conversation with defendant and his companion, Ackerman, who was riding with defendant at the time of the accident, at which time the officer asked them what speed they were going and each replied that they were going about 25 or 30 miles per hour.

Mr. Ackerman testified that he was seated beside defendant; that he observed

plaintiff's car when it was "out by the intersection" and in reply to what then happened, he stated:

"A. I put my hands up in front of my face, because I thought we were going to collide, and nothing happened for a few seconds and I took them down, and I saw that we were directly —that he was directly in front of us so I put them back up again, and then kind of a sickening thud."

Mr. Ackerman did not state his estimate of how far they were from the intersection when he first saw plaintiff's truck. However if they were traveling 30 miles per hour, which equals 44 feet per second, and several seconds passed while he had his hands in front of his face the first time, it would tend to establish that they were a substantial distance from the intersection when plaintiff entered it. Although this witness was evidently frightened by what he observed, he does not recall a single manifestation on the part of defendant to indicate that he, defendant, at any time observed plaintiff's truck or was aware of any danger. Defendant did not, to the knowledge of the man who sat beside him, blow his horn or apply his brakes, nor was there any evidence on the street which indicated that the brakes on defendant's car had been applied at any point before the collision.

Defendant's car entered Blaine Street at the intersection of 2nd and Blaine, two blocks from where the accident happened. The conduct of defendant and his companion as they drove along Blaine Street is of significance in throwing some light on the issue of proximate cause of this accident. The following quoted testimony of Chris Ackerman in response to an interrogation as to how fast they were traveling is self-explanatory:

"A. Well, when we first turned on to Blaine, Jack had made the remark that he had seen a policeman, and he hadn't really. We do this a lot of times, and Jack had slowed down very slow. In fact he, well he almost came to a stop, and then we all laughed and giggled about that. Then he speeded up again, but he was not doing over the speed limit because I would have looked down at the speedometer if he had, and I hadn't looked down at the speedometer. Then the intersection before we got to 4th Street, and I said, 'There is a policeman,' so Jack slowed way down again to—I don't know, he was—probably 10 or 15 miles an hour. He was still in second gear. Then after we had laughed about that one he resumed his normal speed again."

In further explanation of their conduct, defendant testified as follows:

"Q Now do you recall this giggling business that was going on between you and Chris?

"A Yes.

"Q Now, just explain to the jury how you do that?

"A Well, there * * * there * * * like Chris said there are these cops that don't appreciate the young people, I don't believe, and so there is a lot of the kids that when they see a cop, or something, they slow way down. And you might say sort of an aggravation to the cops, I don't know, but anyway; I believe I said it first, we slowed way down. I imagine we were doing about 10. We were in second gear and lugging it down, and then I sped up a little bit. About 15, and we went through * * * I believe one or two intersections, I am not sure.

*   *   *   *   *   *

"Q The time that you did this, the time that you started this giggling routine * * *

"A I wouldn't say giggling.

"Q Well, that is what Chris said.

"A Laughing.

"Q Laughing?

"A Yes.

"Q About the time that you performed this little routine was your car between 3rd and 4th on Blaine?

"A I believe * * * we were going through * * * we had just gone through 3rd, the intersection of 3rd when he said that; I believe, and then we laughed while we went through the intersection, and then we went on again."

We have consistently held that unless the proof is so clear that different minds cannot reasonably draw different conclusions or where reasonable minds would construe the facts and circumstances in only one way, the determination of what constitutes the proximate cause of an accident is essentially a jury question.

Contributory negligence only becomes a question of law when the evidence is susceptible of no other reasonable interpretation than that the conduct of the injured party contributed to his own injury and that he did not act as a reasonably prudent person would have acted under the circumstances. Stowers v. Union Pac. R. Co., supra; Donovan v. Boise City, 31 Idaho 324, 171 P. 670.

The evidence is sufficient to sustain the verdict. The jury was properly instructed and the judgment is affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.