619 P.2d 135

Albert I. ALEGRIA, individually and as spouse, and Raymond A. Alegria, Joseph Alegria and Isabel Bunce, as the children and heirs at law of Marie Josephine Alegria, deceased, Plaintiffs–Appellants,

v.

Lawrence Paul PAYONK, John Forbis and Lorene Golling, individually and as joint–venturers, partners, or d/b/a John's Barn, John Doe 1, 2, 3, 4, 5, and XYZ Corporation, Bobby Catlett and Charles Gilbert, individually and as joint–venturers, partners, or d/b/a The Office, John Doe 6, 7, 8, 9, 10, and ABC Corporation, Defendants–Respondents.

No. 12858.

Supreme Court of Idaho.

Sept. 26, 1980.

Rehearing Denied Nov. 26, 1980.

618

Phillip M. Barber, of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for plaintiffs—appellants.

Perce E. Hall, of Hall & Friedly, Mountain Home, for defendants—respondents John Forbes and Lorene Golling.

Francis H. Hicks, of Hicks & Kevan, Mountain Home, for defendants—respondents Bobby Catlett and Charles Gilbert.

David D. Goss, of Risch, Goss & Insinger, Boise, for defendant—respondent Lawrence Paul Payonk.

DONALDSON, Chief Justice.

This case is before us on appeal from an order granting summary judgment against plaintiffs—appellants in favor of defendants—respondents liquor vendors.

On December 2, 1973, seventeen year old Lawrence Payonk consumed quantities of beer in taverns known as "John's Barn" and "The Office." Later in the evening, while driving in an allegedly intoxicated condition, Payonk collided with a car in which Marie Alegria was a passenger. Mrs. Alegria was killed in the accident and her husband, Albert Alegria, was injured. Albert Alegria and the children of decedent filed suit against Payonk and the owners and employees of the two taverns for the injuries sustained by Mr. Alegria and for the death of Marie Alegria. The material allegations of plaintiffs' complaint are, in substance, that defendants sold, served and dispensed alcoholic beverages to Payonk, notwithstanding that defendants knew or should have known that Payonk was under the legal drinking age of nineteen years and knew that he was actually, apparently and obviously intoxicated at the time so served; that the auto collision occurred as a result of the intoxication of Payonk, which intoxication resulted from consumption of the alcoholic beverages negligently served to him by defendants; and that the negligent acts of defendants were the actual and proximate cause of the death of decedent and the injuries and damages sustained by plaintiffs.

Pursuant to motion the district court ruled that the decision in *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969), compelled the conclusion that as a matter of law the vending of intoxicants cannot be a proximate cause of damage to a third person and accordingly granted summary judgment against plaintiffs.

Construing the facts and all reasonable inferences from the evidence in favor of plaintiffs—appellants, as we must in reviewing an order of summary judgment entered in favor of defendants, *Mitchell v. Sequeiros*, 99 Idaho 396, 582 P.2d 1074 (1978), the narrow issue presented is whether in this state the sale of alcoholic beverages by a licensed vendor of such beverages to an actually, apparently and obviously intoxicated person known to be a minor can be a contributing actual and proximate cause of the damage resulting to a third person from the subsequent negligent operation of an automobile by such intoxicated minor, thereby giving rise to a cause of action against such vendor.

In *Meade v. Freeman, supra*, this Court was first presented with the question whether the sale of intoxicants could, *under any circumstances*, visit upon the seller liability for injury tortiously caused by the consumer of such intoxicants. The question was answered by the Court in the negative:

"[Plaintiffs'] theory runs squarely in the face of almost all authority. It is nearly universally held (citations omitted) that it is the consumption of intoxicants that constitutes the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer and that *the vending of intoxicants is too remote to be considered a proximate cause*." (emphasis added) 93 Idaho at 392, 462 P.2d at 57.

In the intervening decade since *Meade* was decided, four of the cases upon which the majority relied have been overruled. *Cole v. Rush*, 289 P.2d 450 (Cal.1955) and *Fleckner v. Dionne*, 94 Cal.App.2d 246, 210

P.2d 530 (1949) were overruled by the California Supreme Court in the unanimous decision handed down in *Vesely v. Sager*, 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971). *Lee v. Peerless Ins. Co.*, 183 So.2d 328 (La.1966) was overruled by the Louisiana Supreme Court in *Pence v. Ketchum*, 326 So.2d 831 (La.1976), and finally, in *Lewis v. State*, 256 N.W.2d 181 (Iowa 1977), the Iowa Supreme Court, also by a unanimous court, overruled *Cowman v. Hansen*, 250 Iowa 358, 92 N.W.2d 682 (1958).

Appellants contend the time has come for this Court to reexamine the wisdom of a rule which in *all* cases precludes the factfinder from considering the sale of intoxicants as a possible proximate cause of subsequent injury occasioned to others by the drunken consumer. In their view, the rule is anachronistic in an age where death and destruction occasioned by drunken driving is so tragically frequent. They urge that in the case of an already intoxicated minor, the progression of sale–consumption–aggravated drunkenness–driving–injury flows so logically as to make continued application of the rule indefensibly at odds with the well–settled principle that, where reasonable minds could draw differing inferences, questions of negligence and proximate cause are normally to be resolved by the trier of fact. *See, e. g., Idaho State University v. Mitchell*, 97 Idaho 724, 552 P.2d 776 (1976); *Smith v. City of Preston*, 97 Idaho 295, 543 P.2d 848 (1975); *Fairchild v. Olsen*, 96 Idaho 338, 528 P.2d 900 (1974). We agree.

■ The elements of common law negligence have been summarized as (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *Brizendine v. Nampa Meridian Irrigation Distr.*, 97 Idaho 580, 548 P.2d 80 (1976).

■ In general, it is held that "one owes the duty to every person in our society to use reasonable care to avoid injury to the other person *in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.*" (emphasis added) *Kirby v. Sonville*, 286 Or. 339, 594 P.2d 818, 821 (1979). And in *Harper v. Hoffman*, 95 Idaho 933, 523 P.2d 536 (1974), this Court stated:

> " 'Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury.' " 95 Idaho at 935, 523 P.2d at 538, *quoting from Whitt v. Jarnagin*, 91 Idaho 181, 188, 418 P.2d 278, 285 (1966).

In determining whether such duty has been breached by the allegedly negligent party, his conduct is measured against that of an ordinarily prudent person acting under all the circumstances and conditions then existing. *Nagel v. Hammond*, 90 Idaho 96, 408 P.2d 468 (1965). We perceive no justification for excusing the licensed vendor of intoxicants from the above general duty which each person owes all others in our society.

■ We come now to the question whether the jury in the present case should have been allowed to determine whether respondents, engaged in the daily business of selling intoxicants for consumption on their premises, could reasonably have foreseen or anticipated that their sale of intoxicants to Payonk, whom they knew or should have known to be a minor and whom they knew or should have known to be actually, apparently and obviously intoxicated, might result in injury to appellants; and whether the conduct of respondents in so acting fell below that of a person of ordinary prudence acting under the same circumstances and conditions.

In *Nagel v. Hammond, supra*, it was held that

> " 'where the evidence on material facts is conflicting, or where on undisputed facts reasonable and fairminded men may differ as to the inferences and conclusions to be drawn, or where different conclusions

might reasonably be reached by different minds, the question of negligence ... and proximate cause is one of fact to be submitted to the jury and not a question of law for the court; if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable men differing, the question is one for the jury.' " 90 Idaho 96, 102, 408 P.2d 468, 472 (1965), *quoting from Stowers v. Union Pac. R. Co.,* 72 Idaho 87, 237 P.2d 1041 (1951).

The Oregon Supreme Court, faced with an appeal from a judgment of involuntary non-suit in *Kirby v. Sonville, supra,* framed the central issue as

" 'whether plaintiff's injury and the manner of its occurrence [were] so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur.' " 594 P.2d at 822, *quoting from Stewart v. Jefferson Plywood Co.,* 469 P.2d 783 (Or.1970).

In the present case, it is alleged (1) that respondents liquor vendors[1] sold further intoxicants to a minor at a time when he was *already* actually, apparently and obviously intoxicated, with actual or constructive knowledge of the minor consumer's age and condition; and (2) that such conduct on the part of respondents constituted an actionable breach of the general duty owed appellants, as members of society, to use reasonable care to avoid injury to others in a situation in which injury was foreseeable should respondents fail to use such care.

Subsequent to *Meade,* this Court in *Kinney v. Smith,* 95 Idaho 328, 408 P.2d 1234 (1973), held that a car owner who lends his vehicle to an unlicensed driver may be liable not only on a theory of imputed negligence, but also on the basis of the owner's independent negligence in entrusting the automobile to the unauthorized driver. In

a footnote, we indicated that negligent entrustment of an automobile to one who is intoxicated would also be actionable. *Kinney v. Smith,* 95 Idaho at 331, 508 P.2d at 1237, at n. 1.

The "negligent entrustment" tort approved in *Kinney* is a recognition of the risk of injury which exists when two ingredients are combined; the automobile and an incompetent or incapacitated driver. In *Kinney,* we said that a party may be liable for providing an intoxicated individual with an automobile. The issue in this case is the converse, i. e., should a party ever be held liable for providing the driver of an automobile with intoxicants.

In ruling on the correctness of the summary judgment entered in this case, we must determine "whether [appellants'] injury and the manner of its occurrence [were] so highly unusual that we can say, as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." *Kirby v. Sonville, supra.* We are constrained to hold that, under the facts alleged at this stage of the proceedings, the question is not one of law but of fact, and should be resolved not by the court but the jury. It appears to this Court that if appellants are able to prove by a preponderance of the evidence that respondents knew or reasonably should have known that the intoxicated minor Payonk would operate an automobile upon leaving their establishment, in addition to proving the allegations of the complaint, a reasonable jury could conceivably find liability.

In *Meade v. Freeman, supra,* the Court considered whether it should, in the absence of statute, make a change in the common law regarding actionable negligence in the vending of intoxicants to consumers. The answer then was in the negative. 93 Idaho at 395, 462 P.2d at 60. However, as the

---

1. It is of pivotal significance in this case that respondents are persons and entities engaged in the daily business of selling intoxicants by the drink, and to whom a jury might reasonably attribute a conscious awareness of the number of drinks sold to and consumed by the minor Payonk as well as the effect such consumption would have on one particularly susceptible to the incapacitating effects of alcohol due to physical and mental immaturity.

court further said in *Meade v. Freeman, supra,*

"the strength of the common law lies in its capacity to adopt itself to ever changing circumstances. Although traditionally hesitant to change, it should not fail to do so where a hoary doctrine loses its raison d'etre." 93 Idaho at 395, 462 P.2d at 60.

We therefore declare that that decision, to the extent it infers that under common–law rule and present statutes the vending of intoxicants can *never* be the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer, is overruled.

Accordingly, the summary judgment in favor of defendants–respondents is reversed and the cause is remanded for further proceedings in accordance herewith. Those proceedings may include a renewal of the motion for summary judgment and any response thereto, both of which must be made in light of the proximate cause standard as set out in this opinion.

BAKES and BISTLINE, JJ., concur.

SHEPARD, Justice, dissenting.

In my judgment, an opinion of a court of last resort should serve certain functions. The ultimate decision should be clearly stated together with sufficient facts so as to enable the decision to be used as controlling precedent in similar cases. Assuming that the case is of any significance, the opinion should state the rationale upon which the decision was reached in order to demonstrate that it was reached on more than instinct or result orientation. Hopefully, there will thus be engendered respect and acceptance for the "law" announced by the opinion and the institution which so announced the "law." Perhaps, more importantly, a clear statement of the Court's reasoning process will aid the development of the law since it will not only be useful in identical or "factually" similar future cases, but may also prove useful in conceptually analogous cases.

In the unusual cases where existing precedent is overruled, it is even more important that a rationale be stated to indicate the reason or perhaps the "policy" bases upon which a change is deemed desirable, necessary and demanded. In those few cases where a court clearly enunciates policy by either overruling a policy determination of the legislature or by establishing as a policy what the legislature has refused to establish, a court must be even more careful to demonstrate that it has examined the various competing policies and to state its reason for the adoption of one policy in preference to another.

With respect, I believe today's majority opinion suffers two defects. First, it is wrong in its result. Second, it provides no rationale or reasoning process. It rather provides only a superficial gloss to the very large questions of whether the Court should judicially legislate in an area in which the great majority of jurisdictions have acted through their legislature or what policies are served by the overruling of what has been termed nearly unanimous common law doctrine. The majority decision fails to even pay lip service to the established rule of decision to be followed by our courts, which originated in Idaho in 1864, continues to remain codified as I.C. § 73–116, and requires the application of the common law of England as the rule of decision in all courts of this state to the extent not inconsistent with legislatively enacted statutes. *See Cannon v. Seyboldt*, 55 Idaho 796, 48 P.2d 406 (1935). Such would, of course, require a result contrary to that of the majority.

*Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969), is indistinguishable from the instant case in any relevant factor. The procedural juncture was the same and the facts are nearly identical. There the Court noted: "The facts are classic in their simplicity, but the legal questions presented are exceedingly complex and of first impression in Idaho." At p. 390, 462 P.2d at p. 55. Those questions were posed as: "Has our legislature authorized a new cause of action against a purveyor of intoxicants, and if our legislature has not, should this Court declare a new cause of action?"

In *Meade*, it was clearly held that there was not then in existence legislatively created dram shop liability. It was noted that at one time a limited form of legislatively created dram shop liability existed in Idaho, but had been repealed. Although Donaldson, C. J., dissented on other grounds, he was careful to point out his agreement with the majority holding that no legislatively created dram shop liability existed. Thus, while a majority of other states have created dram shop liability by legislation, Idaho had not at the time of *Meade*. There is no such liability in existence at the present time. The legislature is held to be on notice of the decisions of this Court, *C. Forsman Real Estate Co. v. Hatch*, 97 Idaho 511, 547 P.2d 1116 (1976); *Oregon Shortline R. Co. v. Pfost*, 53 Idaho 559, 27 P.2d 877 (1923), and has had ample opportunity since 1969 to have acted in response to the invitation of *Meade*: "If such is to be done, it should be done by the legislature wherein all of the policy considerations can and should be carefully weighed and from which, per chance, liability of the type sought here will become a reality with the enactment of a dram shop act." At p. 395, 462 P.2d at p. 60.

I pass then to the second prong of *Meade*; since the legislature has not acted to create dram shop liability, should this Court so judicially legislate? Some small effort at brevity dictates that reference to *Meade* will amply reveal that such liability did not exist at common law and has been judicially created in only a small minority of jurisdictions. In my judgment, the majority opinion fails to even address the question of whether this Court should create a new cause of action where the legislature has refused to do so. It merely notes that some jurisdictions have supposedly reversed themselves since *Meade*. We are favored with no discussion of why the reasoning of some decisions should be considered more persuasive than others and why that reasoning recommends itself to this Court.

I note that the majority cites the California decision of *Vesely v. Sager*, 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971). The California Court indeed held that which the majority opinion attributes to it. One is impelled to observe that such a result should not be unexpected from a Court which had so far departed from traditional tort doctrine to hold that a defendant may be held to have reasonably expected a third person would commit murder and thus be civilly liable to heirs of the victim. *See Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). *See also Hergenrether v. East*, 61 Cal.2d 440, 39 Cal.Rptr. 4, 393 P.2d 164 (Cal.1964), where a defendant was held liable for damages of plaintiffs, who were injured after defendant's truck was stolen by unknown third parties and thereafter involved in a collision with plaintiffs' automobile. Perhaps a more practical observation is that difficult facts sometimes produce bad law.

"Defendant Sager owned and operated the Buckhorn Lodge, a roadhouse located near the top of Mount Baldy in San Bernardino County, and was engaged in the selling of alcoholic beverages to the general public. Beginning at about 10:00 p. m., on April 8, 1968, Sager served or permitted defendant O'Connell to be served large quantities of alcoholic beverages * * *. Sager also knew that the only route leaving the Buckhorn Lodge was a very steep, winding and narrow mountain road and that O'Connell was going to drive down that road. Nevertheless, Sager continued to serve O'Connell alcoholic drinks past the normal closing time of 2:00 a. m. until 5:15 a. m., on April 9. After leaving the lodge, O'Connell drove down the road, veered into the opposite lane, and struck plaintiff's vehicle. The complaint also alleges that O'Connell drove the automobile with the consent, permission, and knowledge of the remaining defendants, that each defendant was the employee and agent of the other defendants, and that each of the defendants 'was at all times acting within the purpose and scope of said agency and employment.'" *Vesely*, 486 P.2d at 154, 95 Cal.Rptr. at 626.

The second of the cases relied on by the majority is *Pence v. Ketchum*, 326 So.2d 831 (La.1976). The majority's reliance on *Ketchum* is misplaced. At the outset, the question addressed in *Ketchum* is far removed from the instant case. There, the plaintiff was an intoxicated business invitee of the defendant, who was injured after having been ejected from the bar. Clearly, there was involved only the quantum of duty between a purveyor and a consumer of intoxicants and the alleged breach of that duty, much as between any other business operator and a patron business invitee. I deem such to be a far cry from the instant question of the duty, if any, existing between a business operator and a third person whose injuries were caused by a business invitee at a different place and a different time. Lastly, *Ketchum* was in turn overruled in *Thrasher v. Leggett*, 373 So.2d 494 (La.1979). *See* 40 La.Law Rev. 938 (1980).

The third case relied upon by the majority is *Lewis v. State*, 256 N.W.2d 181 (Iowa 1977). As the title might imply, the action was brought against the State for the alleged negligent and wrongful sale of intoxicating liquor by the State through its liquor sale monopoly. While the opinion in *Lewis* did discuss the establishment of dram shop liability by common law judicial enactment, the fact remains that Iowa then had and presently has legislatively created dram shop liability. *See* Iowa Code 1954, § 129.-1–129.12, Iowa Session Laws 1971, Ch. 131, §§ 92–94, Code of Iowa 1979 §§ 123.92–123.-94.

Neglected by the majority are the cases of *Hamm v. Carson City Nuggett, Inc.*, 450 P.2d 358 (Nev.1969), and *Holmes v. Circo*, 244 N.W.2d 65 (Neb.1976). In *Holmes*, a unanimous Court in a factual and legal context indistinguishable from the case at bar refused to judicially create dram shop liability, stating:

"With case law supporting the position of both parties, the ultimate decision of whether to impose a civil duty on the tavern owner because of a statute drawn to protect the public by preventing the sale of liquor to those intoxicated or under age is clearly a question of policy. "We are mindful of the misery caused by drunken drivers and the losses sustained by both individuals and society at the hands of drunken drivers, but the task of limiting and defining a new cause of action which could grow from a fact nucleus formed from any combination of numerous permutations of the fact situation before us is properly within the realm of the Legislature."

[*See* a critical note, 56 Neb.Law Rev. 951 (1977).]

One may argue at this juncture that this Court, within its authority to not only state but *enlarge* the common law, may take the step urged by the majority today. The question remains–should it, and if so, why? We are not asked to overrule judicially created immunities or exemptions–we are asked to create an entirely new cause of action, presumably based on a new philosophy. The majority here offers no explanation as to "why."

Until now we have held that the purveying of intoxicants is too remote to constitute a proximate cause of damages by a consumer to a third person. It is held that it is not the purveying, but rather the consumption of intoxicants which is the proximate cause. It has been pointed out that such is only the result of a logical syllogism, which indicates that vending without consumption can not constitute causation.

As pointed out in *Carson City Nuggett, supra*, and *Cirro, supra*, to reach either result requires multitudinous policy decisions. Do we apply a different standard of care to only those in the *business* of dispensing intoxicants and, if so, within that generalization, where do we begin and where do we stop? Is such liability to be imposed upon the State of Idaho, which monopolizes all sales of "liquor" at retail for off–premises consumption and wholesales to other businesses for on–premises consumption? *See Lewis v. State, supra*. Is such liability to be extended to any purveyor of beer or wine, including the supermarket, the convenience store, the Ma and Pa neighborhood store,

the automobile raceway, the ski resort, the golf course, the county fairgrounds, the fraternal or service club picnic, and the innumerable other businesses and organizations which may incidently engage in the vending of beer or wine under various circumstances? What distinction, if any, is to be drawn between different "purveyors"? Is this new liability to be applied only to "vendors"? What of the social host who furnishes or "purveys" intoxicants to his social guests? From the majority's use of "every person" as quoted from *Harper v. Hoffman*, 95 Idaho 933, 523 P.2d 536 (1974), one must surmise that the new liability is not restricted to those who sell. The problem is far from illusory. *See Carr v. Turner*, 385 S.W.2d 656 (Ark.1965); *Dwan v. Dixon*, 30 Cal.Rptr. 749 (1963) [denying liability of a social host] as contrasted with *Brockett v. Kitchen Boyd Motor Co.*, 264 Cal.App.2d 69, 70 Cal.Rptr. 136 (1968) [affirming liability of social host]. 57 Calif.L.Rev. 995 (1969).

It serves no purpose and is of no assistance to the bench and bar for the majority to state that negligence and proximate cause are questions for the jury, nor is it of any assistance to state general rules regarding a duty to use care to avoid injury when such can be "reasonably anticipated or foreseen." A jury does not arrive at a verdict in a vacuum, but rather as a result of and in conformance with instructions of the trial court. In the instant case, is the jury to be left to its own speculation under the over–generalized language of the majority?

As set forth in the majority, "negligence" is an abstract concept which must be defined for a jury as consisting of certain elements. First and foremost among those elements there must be "a duty *recognized by law.*" Without the existence of "*a duty recognized by law,*" the remaining elements are irrelevant and can not by themselves be the basis of a cause of action in negligence.

What is the duty of the defendants here toward plaintiffs and how should a trial court define that duty in its instructions to the jury? Must a proprietor inquire about the sobriety of every entering patron? Should a proprietor inquire of a patron of his mode of transportation and if the patron intends to commit the crime of driving while intoxicated upon departure? If a proprietor does so inquire and receives satisfactory answers, has his duty been discharged? Must the proprietor count and record the number of drinks served each patron? If a patron has four drinks (assuming such would produce a blood alcohol content beyond the presumptive level, I.C. § 49–1102(b)(2)), should or must a proprietor use persuasion or even physical force to prevent the patron from entering a motor vehicle? If the proprietor so fails in his persuasiveness, is that nevertheless a discharge of his duty or is it an admission that he served the patron too many drinks? Will it be sufficient if all alcoholic beverages, as in tobacco sales, are served in containers or there is imprinted "driving after drinking may be hazardous to the health of others"? Perhaps most importantly, must any business proprietor *reasonably foresee and anticipate* that a customer will commit a crime because of or with the commodity sold, furnished, prescribed or delivered to the customer.

The above questions may appear facetious, but it must be repeated that the trial court must, in its jury instructions, be able to define the "duty recognized by law." Further, and in the future, this Court must consider how, if at all, the "duty" will vary as between a proprietor of a tavern, bar or restaurant as contrasted with a business dealing in liquor, beer or wine for off–premises consumption, such as a grocer, a state liquor dispensary, or some other type of vendor.

Within the generalization of vendors of intoxicants, is it only the combination of drinking and driving which is to result in exposure to liability? Is it only the negligent as contrasted with intentional torts which may result in liability? While liquor may incapacitate or release inhibitions in some, it is also well known for brutalizing others. Should a vendor be required to determine which category a patron may fall within so that he may be protected against an action brought by an assaulted wife,

child, or police officer who contends that it was the vending of the intoxicants that led to the assault and to the resulting damage to the plaintiff? *See Cole v. Rush*, 45 Cal.2d 345, 289 P.2d 450 (1955), overruled in *Vesely v. Sager, supra.*

The majority tells us that the policy decision is made in response to the problem of the drunken driver. We are told that a vendor will expose himself to liability if he serves one already intoxicated who he may reasonably expect will thereafter drive a motor vehicle or if he serves a completely sober person to the point where he becomes intoxicated if he may reasonably believe that the person may thereafter drive a motor vehicle. Such is, of course, only one prong of the problem. What of the vendor of automobiles who sells a vehicle to a person he knows habitually drives or occasionally drives while drunk? Do we impose like liability on the vendor of motor vehicles?

Saloon keepers and bartenders may be largely unloved and considered fair legal game. Perhaps into that same category are to be placed grocers, restauranteurs, and others who in any way, however small, deal in intoxicants of any quality. Perhaps the State, as in Iowa, *Lewis v. State, supra*, is to be held to liability under our Tort Claims Act.

It must be remembered that what is done today reaches far beyond this one class of business. Who placed what instrumentality in the hands, mouth or control of another person and whether such placement by a vendor can be a causative factor are questions of enormous import to the law of the State of Idaho. The reach and sweep of such new doctrine and philosophy can be enormous. Almost any business which sells any type of goods and many of the professions by a logical extension of the majority's doctrine may now be subject to liability.

As previously stated in *Meade* and many other jurisdictions, such multifaceted problems of policy are best left to the legislature. In Idaho, it cannot be said that the legislature has been unaware of the prob-

lems of the drunken driver. The legislature has proscribed such conduct by the enactment of criminal statutes.

Indeed, in the instant case, this member of the United States Air Force was undesirably discharged, convicted of manslaughter and incarcerated in the State penitentiary. Hardly a day passes in which the daily newspaper does not contain columns of information relating to the conviction of drunken drivers who are routinely fined and placed on probation without incarceration. The legislature, evidently responding to that problem, made a policy decision that every person convicted of drunken driving should be required to serve a mandatory five–day jail term. With that policy, I disagree, but I would have deferred to the legislative policy decision. However, this Court in *State v. McCoy*, 94 Idaho 236, 486 P.2d 247 (1971), made short shift of that legislative attempt to alleviate the problem of the drunken driver in Idaho. The majority embarks on a journey into the tortuous and uncharted waters of policy which, in my judgment, is best left to the legislature.

McFADDEN, J., concurs.

McFADDEN, Justice, dissenting.

In *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969), this court recognized the common law rule that an injury to a third person caused by an intoxicated person is not actionable against the vendor who sold liquor to the intoxicated person because the sale was only a remote, and not a proximate, cause of the injury. We stated in *Meade* that the common law rule arises from the normal assumption that a person should not be able to relieve himself from responsibility for his own acts by becoming intoxicated, and from the further assumption that it is not a tort to sell liquor to an able–bodied person, since the liquor vending business is legitimate and the purchaser is deemed responsible. *Id.* at 395, 462 P.2d at 60.

The logical premises on which the common law rule is based have not changed since the *Meade* decision. Intoxicated per-

sons are still legally responsible for their acts, liquor vending is still a legitimate business, and the consumption of liquor is still closer to the injury in terms of causation than the sale or dispensing of the liquor. What has changed is this court's willingness to disregard the premises on which the common law rule is based, and replace them with an emphasis on policy considerations which arguably indicate a need for vendor liability.

The majority's abrogation of the common law rule reflects an attempt to reallocate the burden of risk bearing from injured persons to vendors of liquor for damages resulting from certain alcohol related accidents. It also reflects a view that the vendor or dispenser has a special responsibility to protect the public from unreasonable risks of injury because he is profiting from the sale of a potentially dangerous product.

Whether one agrees or disagrees with the policy considerations relied on by the majority in casting aside the common law rule of non–liability, the simple fact remains that as a general proposition courts may not authorize actions unknown to the common law in the absence of legislative enactment or policy to the contrary. 15A C.J.S. *Common Law* § 12 (1967). This principle of judicial restraint is statutorily and judicially recognized in Idaho. I.C. § 73–116, provides:

> "The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state."

And in the case of *Moon v. Bullock*, 65 Idaho 594, 607, 151 P.2d 765, 771 (1944), we stated:

> "[N]o legislative adoption is necessary to affirm the existence of the common law, but the statutory enactment is essential to repeal, abrogate or change the rules or doctrine of the common law. The rules of the common law are not to be changed by doubtful implication."

Idaho has no dram shop act or civil damage statute imposing vicarious liability on the vendor or dispenser of liquor for injury inflicted on third persons by an intoxicated person or minor. Moreover, the argument raised by appellant that the Idaho legislature has inferentially modified the common law rule of non–liability in enacting statutory provisions forbidding the retail dispensing of liquor to persons who are visibly intoxicated or minors (I.C. §§ 23–603, 23–605, 23–929) is inapposite. It is true that in other contexts we have held that a violation of criminal statutes similar to the ones raised here give rise to cause of actions sounding in negligence per se. *Bale v. Perryman*, 85 Idaho 435, 380 P.2d 501 (1963) (violation of statute prescribing rules of operation of motor vehicles constitutes negligence per se) *Carron v. Guido*, 54 Idaho 494, 33 P.2d 345 (1934) (violation of statute against sale of firearms to a minor constitutes negligence per se); *Curoe v. Spokane & Inland Empire R.R. Co.*, 32 Idaho 643, 186 P. 1101 (1920), 37 A.L.R. 923 (1925) (violation of statute against accumulations of combustible material along railroad right–of–way constitutes negligence per se). However, all three of these cases involved cause of actions which were specifically recognized by the common law. Further, it has been held elsewhere that the purpose of statutes forbidding the sale of liquor to intoxicated persons or minors is to regulate the business of selling liquor, and not to enlarge civil remedies. *Collier v. Stamatis*, 162 P.2d 125 (Ariz.1945); *Carr v. Turner*, 385 S.W.2d 656 (Ark.1965); *Holmes v. Circo*, 244 N.W.2d 65 (Neb.1976). Finally, and most importantly, it is not dispositive that the statutes relied on by appellants may be viewed as establishing a cause of action sounding in negligence per se. The case of *Keaton v. Kroger Co.*, 237 S.E.2d 443 (Ga. App.1977), presented the Georgia Court of Appeals with the question of whether a violation of a statute prohibiting the sale of alcoholic beverages to a minor was negligence per se for purposes of allowing an injured third person recovery from the vendor. In denying recovery, the court aptly observed:

"[S]o long as the common–law rule is adhered to, it matters not whether the act of furnishing liquor may be considered as simple negligence or negligence per se in violation of the criminal statute–it cannot, alone, leap the common law's chasm of causation. (Citing cases.) This is why the violation of liquor laws cannot be analogized to other types of negligence per se, and why legislation is required which directly imposes liability in derogation of the common law." *Id* at 447.

The aforementioned provisions of the Idaho Liquor Act having no appositeness, in conjunction with the absence of a dram shop act or civil damages statute in this state, dictate that this court is constrained from modifying the common law in the instant case. As was stated in *Meade, supra*:

"If the courts are thereby commanded to create a remedy for a wrong where no remedy existed theretofore . . . they would in many instances be called upon to legislate; it would often require them to modify or entirely override positive and well–established rules and laws. The books are full of instances where the courts have had to admit that existing law–statutory or common–did not do exact justice, or did not meet with our revised ideas of justice, but that the remedy lay, not with the courts, but with the legislature." 93 Idaho at 394, 462 P.2d at 59 (quoting from *Moon v. Bullock*, 65 Idaho 594, 603, 151 P.2d 765, 769 [1944]).

Additionally, the Idaho legislature is presumed to have knowledge of the *Meade* decision's adherence to the common law rule disallowing recovery by injured third persons against vendors of liquor arising from the sale of liquor to intoxicated persons or minors. *See* 2A Sutherland, Statutory Construction, § 45.12 (C. Sands Editor, 1973). The legislature has taken no steps to overrule *Meade's* adherence to the common law. Until the legislature so acts, this court should not presume to take it upon itself, as the majority of the court has done today, to abrogate the common law by making wide–sweeping policy decisions, which in my belief are reserved under our constitution for legislative consideration. Idaho Const. Art. II, § 1.

The above conclusion is not without recent authority. *See, e. g., Profitt v. Canez*, 118 Ariz. 235, 575 P.2d 1261 (Ariz.1978) (but *see Lewis v. Wolf*, 122 Ariz. 567, 596 P.2d 705 [Ariz.App.1979]); *Nelson v. Steffens*, 170 Conn. 356, 365 A.2d 1174 (1976); *United Services Auto Ass'n. v. Butler*, 359 So.2d 498 (Fla.App.1978); *Keaton v. Kroger Co., supra*; *Holmes v. Circo, supra*; *Marchiondo v. Roper*, 90 N.M. 367, 563 P.2d 1160 (N.M.1977); *Ceriffin v. Sebek*, 245 N.W.2d 481 (S.D.1976); *Olsen v. Copeland*, 90 Wis.2d 483, 280 N.W.2d 178 (1979).

The recent case of *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976), is illustrative in its analysis. The Nebraska Supreme Court in *Holmes* held that a violation of that state's criminal statute forbidding the retail sale of liquor to visibly intoxicated persons did not create a civil remedy nor impose a duty on part of the vendor toward injured third persons. 244 N.W.2d at 68. While the court acknowledged the recent trend of cases imposing such liability, it expressed the view that the issue was one of public policy best left to the province of the legislature. The court in *Holmes* stated:

"We are mindful of the misery caused by drunken drivers and the losses sustained by both individuals and society at the hands of drunken drivers, but the task of limiting and defining a new cause of action which could grow from a fact nucleus formed from any combination of numerous permutations of the fact situation before us is properly within the realm of the legislature."

"The imposition of a common law duty of due care would create a situation rife with uncertainty and difficulty. If the commercial vendor is liable for negligence, does the host at a social gathering owe a duty to prospective victims of guests? The difficulties of recognizing intoxication and predicting conduct of an intoxicated patron without imposing

some duty of inquiry are evident. Problems could also arise in the apportionment or sorting out of liability among the owners of various bars visited on 'bar hopping' excursions. The correct standard of care to be used also presents a problem, as does the determination of whether all acts of the patron, including intentional torts, should be included within the liability of the tavern owner or operator."

"We agree with the conclusion of the court in *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 450 P.2d 358 (1969), that, in the final analysis, the controlling considerations are public policy and whether the court or legislature should declare it. We believe that the decision should be left to the legislature. The legislature may hold hearings, debate the relevant policy considerations, weigh the testimony, and, in the event it determines a change in the law is necessary or desirable, it can then draft statutes which would most adequately meet the needs of the public in general, while balancing the interests of specific sectors." *Id.* 244 N.W.2d at 70.

As the above reasoning from the *Holmes* case makes clear, the majority today is creating a cause of action unknown at common law with uncertain and potentially far reaching ramifications. The vice of the majority opinion is that this court cannot, short of a policy decision, create the legal position of vendor liability for injuries to third persons in the absence of a specific statutory scheme. There being no such statutory declaration in this state, the creation of vendor liability is a matter best left to the Idaho legislature.