*690 P.2d 939*

ESTATES OF Mustie BRAUN aka Eustachius Braun and Marion Braun aka Becky Braun, husband and wife, Michael Braun aka Muzzie Braun, individually and as Personal Representative of the Estates of Mustie and Becky Braun, Patty Ann Flint, Gary Braun, Becky Lou Campbell and Bill Braun, **Plaintiffs-Appellants,**

v.

CACTUS PETE'S, INC.,
**Defendant-Respondent,**
and

Clovas Watson Rader, Defendant.

No. 14546.

Court of Appeals of Idaho.

Oct. 25, 1984.

Petition for Review Granted
Jan. 16, 1985.

G. Kent Taylor, of Taylor, Beito, Sinclair & Covington, Twin Falls, for plaintiffs-appellants.

Jeremiah A. Quane, of Quane, Smith, Howard & Hull, Boise, for defendant-respondent.

WALTERS, Chief Judge.

Two issues are raised in this appeal. First, does Idaho law recognize a cause of action against a tavern owner for injuries alleged to have been foreseeably caused by a patron to whom the tavern owner's employees continued to serve drinks after he became intoxicated? Second, does Idaho or Nevada law apply in a suit brought by the children of Idaho residents killed in an auto accident which occurred in Idaho and allegedly was caused by another Idaho resident who had become intoxicated in a Nevada tavern? The trial court decided Nevada law applied in this case and that Idaho recognizes a cause of action against a tavern owner only in limited circumstances not applicable here. Summary judgment was granted in favor of the tavern owner. We reverse.

The facts, viewed favorably to the appellants on summary judgment, are as follows. Becky and Mustie Braun died from injuries they received when their vehicle collided head-on with a vehicle driven by Clovas Rader. The accident occurred on Idaho Highway 93 at a point north of the Nevada border. The Brauns were traveling to their jobs at a Nevada casino. Rader was returning home from a lengthy drinking and gambling spree at Cactus Pete's, a casino in Jackpot, Nevada, next to the Idaho border. Rader's pickup strayed across the center line into the path of the Brauns' passenger car. The Brauns' children, in their individual capacity and on behalf of the Brauns' estates, brought a wrongful death action against Rader and Cactus Pete's, Inc. The plaintiffs' claim

against Rader was settled. Their claim against Cactus Pete's is the subject of this appeal.

## I

Until *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980), was decided, Idaho did not recognize a tort claim against a tavern owner when an inebriated patron causes an auto accident after leaving the tavern. The previous rule, announced in *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969), held that *consumption* but not the *sale* of intoxicants could foreseeably lead to injuries and property damage in an auto accident. Idaho joined the majority of states that did not have dram-shop legislation by holding as a matter of law that the serving of alcoholic beverages was too far removed from any accident caused by the inebrient to constitute a proximate cause of the accident. As stated by *Meade*, "the common law holds that it is not actionable negligence to serve intoxicants to an able bodied man." 93 Idaho at 392, 462 P.2d at 57.

In *Alegria v. Payonk, supra,* our Supreme Court reviewed the rule stated in *Meade*. The defendant tavern owners in *Alegria* allegedly had continued to serve drinks to seventeen year old Lawrence Payonk after he was intoxicated, even though they were aware of his minority. Later, Payonk was involved in an auto accident fatal to Marie Alegria. Citing the rule in *Meade*, the trial court granted summary judgment on behalf of the tavern owners. Our Supreme Court reversed and held that the trier of fact should determine whether serving drinks to an already intoxicated minor was a proximate cause of Mrs. Alegria's death. In respect to *Meade*, the court said:

> We therefore declare that that decision, to the extent it infers that under common-law rule and present statutes the vending of intoxicants can *never* be the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer, is overruled. [Emphasis in original.]

*Alegria,* 101 Idaho at 621, 619 P.2d at 139.

The question presented in the instant case is whether serving drinks to an intoxi-

cated adult can be a proximate cause of damage to third parties resulting from the tortious acts of the consumer. Cactus Pete's argues that *Alegria* should be limited to its facts and that *Meade* states the controlling rule of law for cases where the consumer is not a minor. We disagree.

The *Alegria* court, quoting *Kirby v. Sonville,* 286 Or. 339, 594 P.2d 818 (1979), reiterated the common law rule that "one owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could reasonably be anticipated or foreseen that a failure to use such care might result in such injury." 101 Idaho at 619, 619 P.2d at 137. The plaintiffs in *Alegria* had alleged that the defendant tavern owner was engaged in the daily business of selling intoxicants for consumption on the premises; that the defendant served alcoholic beverages to Payonk notwithstanding the defendant knew or should have known that Payonk was under the legal drinking age and knew that he was actually, apparently and obviously intoxicated at the time he was served; that the auto collision in which Mrs. Alegria died occurred as a result of Payonk's intoxication, which intoxication resulted from consumption of the alcoholic beverages negligently served to him by the defendant tavern; and that the negligent acts of defendants were the actual and proximate cause of the death of decedent and the injuries and damages sustained by the plaintiffs. Our Supreme Court held that whether the defendant tavern owner had breached the general duty to use reasonable care in a situation in which it could reasonably be anticipated or foreseen that failure to use such care might result in injury to a plaintiff was a question of fact for the jury.

 We do not believe that such a determination should be removed from the province of the jury simply because the intoxicated consumer's age exceeds the statutory minimum. In a given factual context, the chronological immaturity of an

underage alcohol consumer might make it more foreseeable that injuries would result from his intoxication than if the consumer were legally old enough to drink. However, the fact that the consumer is of legal age does not make the possible consequences of his intoxication so less foreseeable that a jury would have to find that the vendor could not reasonably have foreseen injuries resulting from the tortious conduct of the intoxicated consumer. "[W]here reasonable minds could draw differing inferences, questions of negligence and proximate cause are normally to be resolved by the trier of fact." *Alegria*, 101 Idaho at 619, 619 P.2d at 137. The previous *Meade* rule, holding that serving intoxicants was always too remote a cause of injuries to constitute proximate cause, was a legal fiction resulting from a policy to protect the economic interest of alcohol dispensers. *Alegria* discarded the fiction. Whether the vending of intoxicants was the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer is a determination for the jury. "We perceive no justification for excusing the licensed vendor of intoxicants from the ... general duty [of care] which each person owes all others in our society," *Alegria*, 101 Idaho at 619, 619 P.2d at 137, simply because the consumer is of legal drinking age.

■ In their complaint, the plaintiffs here alleged that Cactus Pete's served alcoholic beverages to Rader even after Cactus Pete's became aware Rader was exhausted and was "actually, apparently and obviously intoxicated," that Cactus Pete's knew or should have known that Rader would drive upon a public highway to return home in Idaho, and that Cactus Pete's conduct amounted to a failure to use reasonable care in a situation in which injury to the plaintiffs was foreseeable. On proof of these allegations, a jury could find that Cactus Pete's conduct was a proximate cause of the damage sustained by the plaintiffs.

II

We consider next the choice of law issue and the trial court's conclusion that Nevada law controls the disposition of the plaintiffs' claims. The Brauns and Cactus Pete's agree that the "most significant relationship" test as stated in the RESTATEMENT (SECOND) OF THE CONFLICT OF LAWS (1968) (hereinafter referred to as the *Restatement*) should control the choice of law analysis in this case. They disagree as to the result reached under that analysis. We agree with the Brauns that Idaho law should apply.

In *Rungee v. Allied Van Lines, Inc.*, 92 Idaho 718, 449 P.2d 378 (1968), our Supreme Court adopted the most significant relationship test in a dispute involving a contract. Following the Supreme Court's lead, this Court adopted the most significant relationship test in tort cases. *De-Meyer v. Maxwell*, 103 Idaho 327, 647 P.2d 783 (Ct.App.1982). Thus, our choice of law analysis is guided by sections 6 and 145 of the *Restatement*.

Section 6 of the *Restatement* provides, in part, as follows:

Choice of Law Principles.

. . . .

(2) When there is no [statutory] directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Only the contacts with Nevada and Idaho which are significant for purposes of the application of the competing rules of law

**488**

are weighed in this analysis. Our analysis is as follows:

(a) Application of Idaho law to a Nevada casino owner arguably would affect the interstate system adversely.

(b) Idaho's policy is to hold tavern owners liable for injuries that are proximately caused by the tavern owner's conduct. That policy clearly is best served by applying Idaho law.

(c) Nevada is the only other interested state. Nevada's policy of protecting the economic interests of casino owners is less significant where the particular casino is located so as to attract and accomodate Idaho patrons.

(d) We believe a Nevada casino owner who locates his casino on a highway carrying traffic to and from Idaho reasonably could expect patrons of his establishment to be operating motor vehicles in Idaho after their departure and, therefore, could expect Idaho law to apply to an accident in Idaho involving such a patron. Certainly persons injured within Idaho justifiably could expect Idaho law to apply to their claim. Cf. *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983) (Missouri rather than Illinois law applies where decedent was domiciled and injured in Missouri and Illinois tavern keeper should have been aware that many of its patrons came from Missouri in as much as its tavern was located near the Illinois-Missouri border).

(e) As we stated in *DeMeyer v. Maxwell, supra*, "the basic policy of negligence law is to allow a person to recover from injury proximately caused by another's violation of a duty of reasonable care." 103 Idaho at 330, 647 P.2d at 786. That policy would be furthered by application of Idaho law.

(f) We cannot say that certainty, predictability and uniformity of result would be greatly hampered by application of Idaho law to an accident on Idaho highways.

(g) Ease in determination and application of the law to be applied arguably would be enhanced by always applying Nevada law to the conduct of Nevada casino owners.

The *Restatement*, section 145, lists the contacts to be taken into account in applying section 6 to determine the law applicable to an issue. The contacts include:

(a) The place where the injury occurred,

(b) The place where the conduct causing the injury occurred,

(c) The domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) The place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

In this case, Idaho is the domicile of the plaintiffs and the defendant Rader. Idaho is also the place of injury. The relationship between the Brauns and Cactus Pete's, if any, arose from the effect that Cactus Pete's conduct had upon the subsequent actions of a motorist in Idaho. Cactus Pete's is a Nevada corporation and the conduct allegedly causing the injury occurred in Nevada.

Weighing all the factors, we conclude that the Idaho contacts establish a more significant relationship with our state than with Nevada. We hold the trial court erred in its determination to apply Nevada law. Accordingly, we reverse and remand with instructions to the trial court for further proceedings consistent with this opinion. Costs to appellants.

BURNETT, and SWANSTROM, JJ., concur.