702 P.2d 836

**ESTATES of Mustie BRAUN, aka Eustachius Braun, and Marion Braun, aka Becky Braun, husband and wife; Michael Braun, aka Muzzie Braun, individually and as Personal Representative of the Estates of Mustie and Becky Braun; Patty Ann Flint; Gary Braun; Becky Lou Campbell and Bill Braun, Plaintiffs-appellants,**

v.

**CACTUS PETE'S, INC., Defendant-respondent,**

and

**Clovas Watson Rader, Defendant.**

No. 15852.

Supreme Court of Idaho.

June 27, 1985.

G. Kent Taylor, Twin Falls, for plaintiffs-appellants.

Brian Julian, of Quane, Smith, Howard & Hull, Boise, for defendant-respondent.

BAKES, Justice.

The estates of Mustie and Becky Braun filed an action for damages after Mustie and Becky Braun were killed in an automobile accident. Clovas Watson Rader, the driver of the other vehicle, and Cactus Pete's, Inc., were named as defendants. The claim against Rader was subsequently settled. The district court granted a summary judgment motion in Cactus Pete's favor, dismissing Cactus Pete's from this case. The district court's judgment was appealed and assigned to the Idaho Court of Appeals, which reversed the district court. 107 Idaho 484, 690 P.2d 939. A petition for review of the Court of Appeals decision was subsequently granted by this Court. We affirm the district court's order.

The accident occurred on Idaho Highway 93 at a point just north of the Nevada border. The Brauns, who resided in Idaho, were traveling to their jobs at a Nevada casino. Rader, an Idaho resident, was returning home from Cactus Pete's, a casino in Jackpot, Nevada. The accident resulted after Rader's pickup strayed across the center line, colliding head-on with the Braun's passenger car.

In the complaint, plaintiffs alleged that Cactus Pete's continued to serve alcoholic beverages to Rader after Rader was obviously intoxicated. Plaintiffs allege that, under Idaho law, the casino's actions constitute an actionable breach of the casino's general duty to use reasonable care to avoid foreseeable injury to others.

In *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980), this Court held that such a cause of action would be recognized in Idaho, at least as to minors. In *Alegria*, the

general duty to use reasonable care was noted. In discussing this general duty, Justice Donaldson wrote: "We perceive no justification for excusing the licensed vendor of intoxicants from the above general duty which each person owes all others in our society." However, application of conflict of law rules directs us to conclude that the district court correctly applied Nevada law. It is undisputed that the courts of Nevada would not recognize a cause of action against the casino under these facts. *See Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 450 P.2d 358 (1969).

■ The "most significant relationship" test of the Restatement (Second) of Conflict of Laws is applied in Idaho to determine which state's law is applicable in a tort action. *Johnson v. Pischke,* 108 Idaho 397, 700 P.2d 19 (1985); *DeMeyer v. Maxwell,* 103 Idaho 327, 647 P.2d 783 (Ct.App.1982). Section 6 of the Restatement provides:

"Choice of Law Principles.

. . . .

"(2) When there is no [statutory] directive, the factors relevant to the choice of the applicable rule of law include:

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

In addition to the general rule set out in Section 6 of the Restatement (Second) of Conflicts of Laws, Section 145 states:

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) The place where the injury occurred,

"(b) The place where the conduct causing the injury occurred,

"(c) The domicile, residence, nationality, place of incorporation and place of business of the parties, and

"(d) The place where the relationship, if any, between the parties is centered. These contracts are to be evaluated according to their relative importance with respect to the particular issue."

An application of these sections to the facts of this case causes us to conclude that the district court was correct in concluding that Nevada is the state with the most significant relationship to this dispute. Although it is true that the accident itself occurred just inside Idaho, north of the Nevada border, and that the drivers and passenger involved in the accident were Idaho residents, it must be remembered that the plaintiffs here seek to recover for allegedly negligent acts committed solely in the State of Nevada by a Nevada casino, incorporated in the State of Nevada. The public policy of the State of Nevada, as stated in *Hamm v. Carson City Nugget, Inc., supra,* prohibits the imposition of civil liability upon a tavern keeper. Since all of the allegedly negligent conduct of the defendant Cactus Pete's occurred in the State of Nevada, to impose liability based upon Idaho standards would result in an extra-territorial application of Idaho's negligence laws to businesses and activities which, by Nevada standards, are not subject to civil liability.

■ The Brauns themselves were traveling to their employment at Jackpot, Nevada, when their car was struck by the oncoming pickup. Rader, the driver of the pickup, was returning from a visit to the Jackpot casino. In light of the many contacts between all of the parties to this suit and the State of Nevada, and the expressed public policy of that state regarding liability of tavern keepers, we agree with the district court that Nevada law should apply. To do otherwise would result in an extra-territorial application of Idaho law to Nevada conduct, in direct contravention of Nevada law. Having considered the choice

of law principles enunciated in Section 6 of the Restatement, as well as the particular facts of this case, we conclude that the contacts with the State of Nevada are significant, and that this controversy does not justify the application of Idaho law. Accordingly, we vacate the decision of the Court of Appeals and affirm the judgment of the district court.

Costs to defendant respondent. No attorney fees allowed.

DONALDSON, C.J., concurs.

McFADDEN, J. Pro Tem., concurs in result.

SHEPARD, Justice, specially concurring.

I concur in the majority opinion to the extent that the judgment of the lower court is affirmed. I agree that the court has correctly resolved the conflicts of law question. I continue, however, to adhere to my opinions in *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969), and *Alegria v. Payonk*, 101 Idaho 617, 621, 619 P.2d 135, 139 (1980) (Shepard, J., dissenting).

HUNTLEY, Justice, dissenting:

I am of the opinion that the majority errs, both in its refusal to apply Idaho law, and in its failure to further rule that under Idaho law the plaintiffs have a cause of action.

The Idaho Court of Appeals reversed and remanded the case for further proceedings by its well reasoned analysis in *Estates of Braun v. Cactus Pete's, Inc.*, 107 Idaho 484, 690 P.2d 939 (Ct.App.1984), stating:

Whether the vending of intoxicants was the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer is a determination for the jury. "We perceive no justification for excusing the licensed vendor of intoxicants from the ... general duty [of care] which each person owes all others in our society," *Alegria*, 101 Idaho at 619, 619 P.2d at 137, simply because the consumer is of legal drinking age.

As to the choice of law issue, the Court of Appeals correctly ruled that the "most significant relationship test as enunciated in Restatement (Second) of The Conflict of Laws (1968) should control the choice of law analysis in this case."

The Court of Appeals' analysis of the principles of Section 6 of the Restatement indicates that on the whole the interests of Idaho, the forum state, are better served by application of Idaho law. While Nevada has an interest in protecting the economic interests of its business owners, this casino business advertises and caters in large part to residents of Idaho. Its owner is surely aware that patrons leaving his establishment will be operating motor vehicles in Idaho and will be subject to Idaho law.

Similarly, the Court of Appeals determined on consideration of the Restatement, Section 145, contacts to be taken into account that Idaho contacts were more significant than Nevada's. The accident and deaths occurred in Idaho between Idaho residents. The conduct allegedly causing the accident occurred in the casino in Nevada, but with results that could predictably affect subsequent actions of a motorist in Idaho. Again, it is most significant that Idaho patrons constitute a substantial portion of Cactus Pete's customers—many of whom are known to immediately drive northward after consuming the libations served by Cactus Pete's.

Accordingly, I would reverse and remand for further proceedings for the reasons stated by our Court of Appeals.