766 P.2d 729

**Mary Ruth BERGMAN, individually and Mary Ruth Bergman as Personal Representative of the Estate of Steven Newton Bergman and Steven Frank Bergman, Plaintiffs–Appellants,**

v.

**Terri Lynn HENRY, the Estate of Terri Lynn Henry, Wayne Tucker and Nancy Tucker, husband and wife, Hagadone Hospitality Corporation d/b/a Holiday Inn, Donna Trone Luskin and Jane Does I Through III, Defendants–Respondents.**

No. 17011.

Supreme Court of Idaho.

Sept. 9, 1988.

Evans, Craven & Lackie, P.S., Coeur d'Alene, for plaintiffs-appellants. Jarold P. Cartwright argued.

Imhoff and Lynch, Boise, for defendant-respondent Hagadone Hospitality Corp. d/b/a Holiday Inn. Patrick D. Furey argued.

HUNTLEY, Justice.

This appeal presents the issue of whether a cause of action lies against a licensed

vendor of intoxicating beverages for the wrongful death of and personal injuries to third parties caused by the continued serving of alcohol to the patron of the bar.

Steven Newton Bergman was killed while driving his pickup on Highway 95 near Athol, Idaho, when he was struck head-on in his own lane by a vehicle driven by Terri Lynn Henry. Mary Ruth Bergman brought this action both for the wrongful death of her husband and individually for injuries she suffered as a passenger in the Bergman pickup.[1]

Hagadone Hospitality Corporation, doing business as the Holiday Inn in Coeur d'Alene, and two of its employees, Jane Does I and II, were joined as defendants for allegedly continuing to serve alcoholic beverages to Henry knowing that she was becoming "extremely and dangerously intoxicat-

ed," and further knowing that she would be operating a motor vehicle while in an "extremely impaired condition."

After filing an Answer alleging that Bergman failed to state a claim against the defendants upon which relief could be granted, Hagadone Hospitality filed a motion for judgment of dismissal on the pleadings pursuant to I.R.C.P. 12(c). The district court granted the motion dismissing the complaint against Hagadone Hospitality and Jane Does I and II, basically on the ground that Idaho did not recognize, at that time, a cause of action based on "dram shop" liability.[2]

In *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969), this Court held that, in the absence of a specific statute, the vending of alcoholic beverages to an obviously intoxicated individual could not be the proxi-

---

**1.** Mary Ruth Bergman is also suing as personal representative of the Estate of her husband, Steven Newton Bergman and as guardian ad litem of Steven Frank Bergman, the son and only other heir of the decedent.

**2.** The Idaho legislature enacted a dram shop and social host liability act in 1986:

**23–808. Legislative finding and intent— Cause of action.—**
(1) The legislature finds that it is not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons and it is the intent of the legislature, therefore, to limit dram shop and social host liability; provided, that the legislature finds that the furnishing of alcoholic beverages may constitute a proximate cause of injuries inflicted by intoxicated persons under the circumstances set forth in subsection (3) of this section.
(2) No claim or cause of action may be brought by or on behalf of any person who has suffered injury, death or other damage caused by an intoxicated person against any person who sold or otherwise furnished alcoholic beverages to the intoxicated person, except as provided in subsection (3) of this section.
(3) A person who has suffered injury, death or any other damage caused by an intoxicated person, may bring a claim or cause of action against any person who sold or otherwise furnished alcoholic beverages to the intoxicated person, only if:
(a) The intoxicated person was younger than the legal age for the consumption of alcoholic beverages at the time the alcoholic beverages were sold or furnished and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known at the time the

alcoholic beverages were sold or furnished that the intoxicated person was younger than the legal age for consumption of the alcoholic beverages; or
(b) The intoxicated person was obviously intoxicated at the time the alcoholic beverages were sold or furnished, and the person who sold or furnished the alcoholic beverages knew or ought reasonably to have known that the intoxicated person was obviously intoxicated.
(4)(a) No claim or cause of action pursuant to subsection (3) of this section shall lie on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or representatives.
(b) No claim or cause of action pursuant to subsection (3) of this section shall lie on behalf of a person who is a passenger in an automobile driven by an intoxicated person nor on behalf of the passenger's estate or representatives.
(5) No claim or cause of action may be brought under this section against a person who sold or otherwise furnished alcoholic beverages to an intoxicated person unless the person bringing the claim or cause of action notified the person who sold or otherwise furnished alcoholic beverages to the intoxicated person within one hundred eighty (180) days from the date the claim or cause of action arose by certified mail that the claim or cause of action would be brought.
(6) For the purposes of this section, the term "alcoholic beverage" shall include alcoholic liquor as defined in section 23–105, Idaho Code, beer as defined in section 23–1001, Idaho Code, and wine as defined in section 23–1303, Idaho Code.
  In the case before us, the district court appropriately determined that I.C. § 23–808 should not be applied retroactively to the accident in this case, which occurred prior to April 3, 1986, the date this act went into full force and effect.

mate cause of damage to third parties resulting from the tortious or unlawful acts of the obviously intoxicated individual. Later, in *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980), the Court overruled *Meade* in part, stating:

> We therefore declare that [*Meade*], to the extent it infers that under common-law rule and present statutes the vending of intoxicants can *never* be the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer, is overruled.

*Id.* at 621, 619 P.2d at 139.

The alleged facts in *Alegria* involved a defendant, Payonk, who was under the legal drinking age and to whom two tavern owners continued to serve alcoholic beverages well after he was obviously intoxicated. The Court noted that it saw no reason why a purveyor of spirits should be exempt from the general duty "one owes to every person in our society to use reasonable care to avoid injury to the other person *in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.*" (Emphasis added). *Alegria*, 101 Idaho at 619, 619 P.2d at 137, *quoting from Kirby v. Sonville*, 286 Or. 339, 594 P.2d 818, 821 (1979). The Court then proceeded with the following analysis:

> And in *Harper v. Hoffman*, 95 Idaho 933, 523 P.2d 536 (1974), this Court stated:
>
> Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury. 95 Idaho at 935, 523 P.2d at 588, *quoting from Whitt v. Jarnagin*, 91 Idaho 181, 188, 418 P.2d 278, 285 (1966).
>
> In determining whether such duty has been breached by the allegedly negligent party, his conduct is measured against that of an ordinarily prudent person acting under all the circumstances and conditions then existing. *Nagel v. Hammond*, 90 Idaho 96, 408 P.2d 468 (1965). *We perceive no justification for excus-*

*ing the licensed vendor of intoxicants from the above general duty to which each person owes all others in our society.* (Emphasis added).

*Alegria*, 101 Idaho at 619, 619 P.2d at 137.

This Court then applied the above analysis to facts before it:

> The "negligent entrustment" tort approved in *Kinney* [*v. Smith*, 95 Idaho 328, 508 P.2d 1234 (1973)] is a recognition of the risk of injury which exists when two ingredients are combined; the automobile and an incompetent or incapacitated driver. In *Kinney*, we said that a party may be liable for providing an intoxicated individual with an automobile. *The issue in this case is the converse, i.e., should a party ever be held liable for providing the driver of an automobile with intoxicants.*
>
> In ruling on the correctness of the summary judgment entered in this case, we must determine "whether [appellants'] injury and the manner of its occurrence [were] so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur. *Kirby v. Sonville, supra*. We are constrained to hold that, under the facts alleged at this stage of the proceedings, the question is not one of law but of fact, and should be resolved not by the court but the jury. It appears to this Court that if appellants are able to prove by a preponderance of the evidence that respondents knew or reasonably should have known that the intoxicated minor Payonk would operate an automobile upon leaving their establishment, in addition to proving the allegations of the complaint, a reasonable jury could conceivably find liability. (Emphasis added).

*Id.* 101 Idaho at 620, 619 P.2d at 138.

Thus, this Court in *Alegria* applied the rule that there is "no justification for excusing the licensed vendor of intoxicants from the ... general duty which each person owes all others" *to its instant facts,*

which involved the serving of alcohol to a minor who was obviously intoxicated.

Five years later in *Estates of Braun v. Cactus Pete's, Inc.*, 107 Idaho 484, 690 P.2d 939 (App.1985), the Idaho Court of Appeals applied the *Alegria* standard to a case involving the vending of alcoholic beverages to an obviously intoxicated adult, reasoning:

> We do not believe that such a determination should be removed from the province of the jury simply because the intoxicated consumer's age exceeds the statutory minimum. In a given factual context, the chronological immaturity of an underage alcohol consumer might make it more foreseeable that injury would result from his intoxication than if the consumer were legally old enough to drink. However, *the fact that the consumer is of legal age does not make the possible consequences of his intoxication so less foreseeable* that a jury would have to find that the vendor could not reasonably have foreseen injuries resulting from the tortious conduct of the intoxicated consumer. (Emphasis added).

*Id.* at 486, 690 P.2d at 941.

*Estates of Braun* involved a tavern in Jackpot, Nevada, but the accident later occurred in Idaho between Idaho residents. This Court subsequently vacated the Court of Appeals decision, noting that the Court of Appeals erroneously decided the choice of law issue there involved and should have applied Nevada law, which does not recognize a dram shop cause of action. Nevertheless, Justice Bakes, writing for the majority, acknowledged the *Alegria* rule while reversing the Court of Appeals on the conflict of laws issue:

> In *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980), this Court held that such a cause of action would be recognized in Idaho, *at least as to minors*. In *Alegria*, the general duty to use reasonable care was noted. In discussing this general duty, Justice Donaldson wrote: "We perceive no justification for excusing the licensed vendor of intoxicants from the above general duty which each person

owes all others in our society." However, application of conflict of law rules directs us to conclude that the district court correctly applied Nevada law. It is undisputed that the courts of Nevada would not recognize a cause of action against the casino under these facts. (Emphasis added).

*Estates of Braun v. Cactus Pete's, Inc.*, 108 Idaho 798, 702 P.2d 836 (1985).

■ Applying the *Alegria* standard to the facts before us, as well as the reasoning of the Court of Appeals in *Estates of Braun*, we hold that a cause of action does lie against a licensed vendor of spirits for negligently continuing to serve alcoholic beverages to an obviously intoxicated adult. We see no reason for distinguishing between serving liquor to a minor and an adult when either is obviously intoxicated. The consequential factor is not whether the individual is of legal age, but whether that individual is so obviously intoxicated that harm to a third party is foreseeable. Such an issue of foreseeability is one where reasonable minds could draw differing inferences, and should be resolved by the trier of fact. *Estates of Braun, supra.*

■ Finally, given the fact that the Idaho Legislature subsequently has passed a dram shop act, today's ruling only shall apply prospectively, that is, only to this case and other causes of action arising subsequent to September 20, 1985, which have not yet come to final judgment. *See Jones v. Watson*, 98 Idaho 606, 608, 570 P.2d 284 (1977).

Reversed and remanded for proceedings consistent herewith. Costs to appellants, no attorney fees awarded.

JOHNSON, Justice, specially concurring.

I concur in the opinion of Justice Huntley, except the portion that would apply the ruling only to this case and other causes of action arising subsequent to September 20, 1985, which have not yet come to final judgment. I would apply the ruling retroactively.

This decision effectively overrules *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969), insofar as that decision was not modified by *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980). In determining whether the decision should be applied retroactively or perspectively, we should evaluate "1) the purpose of the decision, 2) reliance on the prior rule of law, and 3) the effect upon administration of justice." *Jones v. Watson*, 98 Idaho 606, 609, 570 P.2d 284, 287 (1977).

The purpose of this decision is to make it possible for injured persons or the estates of deceased persons to recover damages from a licensed vendor who served alcoholic beverages to a person who was obviously intoxicated, and who then drove a vehicle while intoxicated, causing the injury or death. By applying this ruling retroactively, this opportunity will be made available to those who have been previously injured, or to the estates of those who have been previously killed, where the appropriate statute of limitations has not already run. This will further our purpose in overruling *Meade*.

I am not prepared to accept as a reason for not applying this ruling retroactively that some licensed vendors may have relied on *Meade* as allowing them to serve intoxicating beverages to drivers who were obviously intoxicated. No social or judicial policy would be furthered by such protection. I am prepared to accept that some insurance companies may have relied upon *Meade* in setting the premium rates for liability insurance issued to licensed vendors. While this reliance is undoubtedly a concern to these companies, their stockholders, and their other policy holders, it is not significant enough, in my opinion, to outweigh the need to provide the opportunity for a recovery of damages under this new ruling.

I am also willing to acknowledge that there may well be cases that will have to be reconsidered because of this decision, or that will be filed that would not have been filed otherwise. In light of the legislature's action in enacting I.C. § 23–808, which became effective on April 3, 1986, I doubt that there will be a sufficient number of these cases to have a substantial effect upon the administration of justice.

Therefore, I would apply the ruling retroactively.

BISTLINE, Justice, concurring in the special concurring opinion of Justice JOHNSON.

Other than for persons under disability, I.C. § 5–213, the two year statute of limitations has run on any alleged cause of action brought under I.C. § 23–808.

BAKES, Justice, dissenting:

The Court's opinion acknowledges that this case falls within our holding in *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969). There we held, following the general rule in the United States, that in the absence of a specifically tailored statute, the vending of alcoholic beverages to an obviously intoxicated individual is not the proximate cause of damage to third parties resulting from the subsequent tortious or unlawful acts of the obviously intoxicated individual. In *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980), this Court announced a limited exception to the general rule pronounced in *Meade*. Our holding in *Alegria* was fact specific and very narrowly tailored. *Alegria* only stands for the proposition that,

"[T]he sale of alcoholic beverages by a *licensed vendor* of such beverages to an actually, apparently and obviously intoxicated person *known to be a minor* can be a contributing actual and proximate cause of the damage resulting to a third person from the subsequent negligent operation of an automobile by such intoxicated minor, thereby giving rise to a cause of action against such vendor." 101 Idaho at 618, 619 P.2d at 136 (emphasis added).

The *Alegria* language quoted by the majority, *ante* at 261, 766 P.2d at 731, is not the holding in that case, but is mere *dicta* and must be construed in light of the issue presented. As Chief Justice Donaldson framed the issue, our holding in *Alegria* applies only to licensed vendors of alcoholic

beverages who sell such beverages to obviously intoxicated minors. Since the facts of the instant case do not fit this very narrowly tailored exception, *Alegria* is not applicable here, and this case is controlled by the general rule announced in *Meade*.

The Court's opinion does not state whether or not it is overruling *Meade v. Freeman, supra*. The majority opinion merely states, "We see no reason for distinguishing between serving liquor to a minor and an adult when either is obviously intoxicated." Does that statement mean that *Meade* is overruled?

While the Court's opinion recognizes that the Idaho legislature passed a "dram shop act," I.C. § 23–808, effective April 3, 1986, it fails to recognize that that legislation is more narrowly drafted and tailored than the Court's broad statement that "[w]e see no reason for distinguishing between serving liquor to a minor and an adult when either is obviously intoxicated." For example, I.C. § 23–808 places limitations on who may bring a claim under the act, specifically prohibiting the intoxicated person, his estate or representatives, or any passenger or his estate or representatives from bringing an action. Furthermore, there is a 180–day notice by certified mail statute of limitations contained in the act. Additionally, the opening policy statement of the act, although qualified later in the act, provides that "it is not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons and it is the intent of the legislature, therefore, to limit dram shop and social host liability...." That statement conflicts with the Court's decision today.

The possible discrepancy between today's opinion and I.C. § 23–808 is further enhanced by the majority opinion's attempt to apply today's decision retroactively, even though the opinion mistakenly describes its action as "prospectively" applying the statute. *Jones v. Watson*, 98 Idaho 606, 570 P.2d 284 (1977), cited as authority for the Court's action, certainly does not support the Court's action today. In *Jones* the Court refused to apply the new ruling to earlier cases, contrary to what the Court does in this case.

In *Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365 (1974), this Court set out the three different approaches to retroactively applying decisions of this Court which overrule prior precedent.

"The first approach is the traditional rule which is derived from the concept that courts do not pronounce new law, but only discover the true law. Under this approach there are no new decisions, but only clarifications of the true law which makes a decision applicable to both past and future cases. The second approach is the prospective rule. Under this rule a decision is effective only in future actions, and does not affect the rule of law in the case in which the new rule is announced. The third approach is the modified prospective rule which is a combination of the traditional and prospective rules. Under the modified prospective rule, the new decision applies prospectively and to the parties bringing the action resulting in the new decision; or, to the parties bringing the action and all similar pending actions." 96 Idaho at 25, 523 P.2d at 1371.

In addition to setting out the categories, the Court in *Thompson* set out the factors to be considered in determining which of the various rules to apply.

"To aid the courts in determining which rule to apply, *Linkletter v. Walker* [381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)] set forth the following factors to be considered. First, the purpose of the new decision must be analyzed in connection with the question of retroactivity. The purpose of holding the automobile guest statute unconstitutional is to prevent guests from being denied equal protection of the law. The purpose would be served by applying the case to both past and future actions. The second factor is reliance on the prior rule of law. The possibility exists that hosts may have offered rides to guests relying on the protection of the guest statute from negligence actions. Additionally, insurance companies may have relied upon the guest statute in setting their rates. The

factor of reliance is very strong in this action. The third factor is the effect on the administration of justice. This factor takes into account the number of cases that would be reopened if the decision that the guest statute is unconstitutional is applied retroactively." 96 Idaho at 25, 523 P.2d at 1371.

Although, as previously noted, the Court's opinion cites and purports to rely on *Jones v. Watson,* 98 Idaho 606, 570 P.2d 284 (1977), notably absent from the Court's opinion is any discussion from the *Jones* case of the analysis which a court must make in order to determine whether or not a new court decision, overruling a prior decision, will be applied prospectively (only to cases in the future), or to some degree retroactively to other causes of action which accrued prior to the overruling decision. The *Jones* Court made that analysis, stating the applicable analysis to be:

" 'The determination of whether a rule is to be given retroactive application is generally made pursuant to a balancing process, wherein the gain to be achieved in the administration of justice by accomplishment of the purpose of the new rule (the first criterion) is balanced against the adverse effects on the administration of justice resulting from the extent to which the courts have mistakenly but in good faith relied on the prevailing rule (the second criterion) and from an application of the new rule for the purpose of reconsidering determinations already finally made pursuant to the then prevailing rule (the third criterion).' *People v. McDaniel,* 16 Cal.3d 156, 127 Cal.Rptr. 467, 472, 545 P.2d 843, 848 (1976)." 98 Idaho at 609, 570 P.2d at 287.

The Court in *Jones* then went through the various categories and analyzed its reasons why the prior overruling decision should only be applied prospectively, *i.e.,* only to causes of action which accrued after the overruling decision. If the majority opinion would apply the analysis of *Jones,* which it cites and relies on, it could hardly reach the result which the Court has done in this case.

The Court's opinion today does not even consider the alternative categories de-

scribed in *Jones v. Watson* or *Thompson v. Hagan, supra,* when it comes up with the date of the accident in this case, September 20, 1985, as the prospective (actually retroactive) date to which it is going to apply its decision. That particular date bears no relationship to any of the standards set out in *Thompson.*

More seriously, the Court does not review any of the policy considerations set out in *Thompson* or *Jones* in determining which of the various approaches it should use in deciding whether the opinion will be applied retroactively or prospectively. Notably absent from the Court's decision is any analysis of the fact that over two years ago the Idaho legislature made a limited change of the rule in *Meade v. Freeman, supra.* As a result, not only is there no need for the Court's action today in its so-called "prospective" overruling of *Meade,* but the Court's decision may well conflict in some respects with the legislature's enactment of I.C. § 23–808, effective April 3, 1986. For example, the "prospective" application of today's decision (as the Court describes it) creates the following ambiguity. For causes of action which accrue after April 3, 1986, will the controlling authority be I.C. § 23–808, or the Court's decision today? If the statute will be the controlling authority, then what is the necessity for the retroactive application of today's decision for a narrow window between September 20, 1985, the date of the accident in this case, and April 3, 1986, the date of the enactment of I.C. § 23–808?

The Court today appears to have given little thought to its ruling. The bar and the public are entitled to know whether or not *Meade* has been overruled; whether I.C. § 23–808 is going to be the controlling authority after April 3, 1986; and why it is necessary to overrule *Meade* "prospectively" (actually retroactively) to cover the narrow period from September 20, 1985, through April 3, 1986, given the enactment by the legislature of I.C. § 23–808.

Applying the standard of *Thompson v. Hagan* and *Jones v. Watson, supra,* and acknowledging the legislature's action in

enacting I.C. § 23–808, effective April 3, 1986, I believe the Court's action in this case is unsettling and unnecessary, and unsupported by all our prior authorities. Accordingly I dissent. The judgment of the district court should be affirmed.

SHEPARD, C.J., concurs.