775 P.2d 1216

**Wilma FISCHER, As Personal Representative of the Estate of Cori Lloyd and on Behalf of the Minor Children of Cori Lloyd: Alan Lloyd and Alicia Lloyd, Plaintiffs–Appellants,**

v.

**Marilyn J. COOPER, Individually and the Marital Community Consisting of Marilyn J. Cooper and John Doe Cooper; Christine Watson, Individually, and Michael Watson, Individually, and the Marital Community Composed of Christine Watson and Michael Watson, Defendants–Respondents.**

and

**Perry W. Bisher, Individually, Defendant.**

No. 17065.

Supreme Court of Idaho.

June 13, 1989.

Jerry T. Dyreson, Spokane, Wash., argued and Pat W. Arney, Coeur d'Alene, for plaintiffs-appellants.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for defendants-respondents, Marilyn J. and John Doe Cooper. Ausey H. Robnett, III, argued.

Lukins & Annis, Coeur d'Alene, for defendants-respondents, Christine and Michael Watson. Charles W. Hosack, argued.

BISTLINE, Justice.

This is a wrongful death action brought by the personal representative of Cori Lloyd on behalf of her estate and two surviving minor children, Alan Lloyd and Alicia Lloyd. Cori Lloyd died from injuries sustained in an automobile/motorcycle collision that occurred in Kootenai County on May 13, 1984.

Robert and Marilyn Cooper owned and operated the Rainbow Inn prior to February 21, 1984. Marilyn Cooper had obtained a renewal of her retail alcoholic beverage license authorizing *her* to sell alcoholic beverages at the Rainbow Inn. On February 21, 1984, the Coopers, having earlier filed a petition in bankruptcy, entered into a lease/option to purchase agreement with Michael and Christine Watson under the terms of which the Watsons took possession of the real estate, fixtures, and inventory of the Rainbow Inn. The Watsons hired their own employees and operated the business as a tavern under the lease provisions of the agreement from that date through May 17, 1984. The Coopers were not involved in the operation of the business after the Watsons took possession. It is apparent, however, that the only liquor license for the premises, and under which it was operated, was in the name of Marilyn J. Cooper.

On May 13, 1984, after patronizing the Rainbow Inn, Perry Bisher left the tavern and drove his motor vehicle on state highway 53. Bisher's headlights were not working at the time, approximately 9 p.m., but Bisher believed there was sufficient remaining daylight in which to drive home. The motorcycle on which Cori Lloyd was a passenger pulled out to pass a third vehicle and collided with the oncoming light-less Bisher vehicle.

The respondents Coopers and Watsons filed respective motions for summary judgment with Judge Magnuson. Judge Mag-

nuson granted the Coopers' motion for summary judgment on the basis that they did not retain any power to control the Watsons' activities, and therefore had no opportunity to prevent the harm alleged in the appellant's complaint. Judge Magnuson determined that liability could not be imposed on the Coopers solely on the basis that the license to sell alcohol at the Rainbow Inn was in the name of Marilyn Cooper.

The trial court also granted the Watsons' motion for summary judgment on the basis that Idaho did not, at that time, recognize an action at common law for bar owner or operator liability to third persons injured by intoxicated patrons of a bar. The Court recognized that our legislature had since passed a Dram Shop Act,[1] but ruled that the statute had no retroactive effect.

This appeal requires us to address the following issues:

1. Whether the trial court erred in granting summary judgment to the Watsons on the basis that Idaho did not recognize a common law action against a vendor of alcohol for injuries to a third party on May 13, 1984.

2. Whether the trial court erred in granting summary judgment to the Coopers on the basis that the Coopers exercised no control over the operation of the Rainbow Inn, even though Marilyn Cooper was the record holder of the Rainbow Inn's liquor license.

## I.

■ In ruling that Idaho did not recognize a common law action against a vendor of liquor for injuries to a third party on May 13, 1984, the trial court incorrectly relied upon *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969). The court reasoned that *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980), merely created an exception to the prior rule of no liability established in *Meade*.

However, we agree with Justice Johnson's special concurrence in the Court's more recent opinion, *Bergman v. Henry*, 115 Idaho 259, 766 P.2d 729 (1988), wherein it is stated that *Bergman* effectively overruled *Meade*. 115 Idaho at 262–63, 766 P.2d at 732–33. The central holding of *Bergman* is that "[A] cause of action does lie against a licensed vendor of spirits for negligently continuing to serve alcoholic beverages to an obviously intoxicated adult." 115 Idaho at 262, 766 P.2d at 732. Since *Alegria* imposed liability for serving a minor, and *Bergman* imposes liability for service to an obviously intoxicated adult, no part of the rule of *Meade* remains. *Bergman* overruled *Meade*.

■ We see no reason why an unlicensed seller, here the Watsons operating a tavern, should escape the liability imposed upon, and the duty of care required of, a licensed seller. The hazard to be guarded against is the same, that of unleashing an obviously intoxicated adult or minor upon the highways. Bolstering this view are Idaho Code §§ 23–603, –605, two very broadly worded statutes both of which provide for punishment as a misdemeanor for service to a minor or an obviously intoxicated adult by *any person:*

> Idaho Code § 23–603. Disposal to minor. *Any person who shall sell, give, or furnish, or cause to be sold, given, or furnished* alcoholic or intoxicating liquor to a person under the age of 21 years, except for medicinal purposes, shall be guilty of a misdemeanor. A second or subsequent violation of this section by the same defendant shall constitute a felony. (Supp.1988). (Emphasis added.)
>
> Idaho Code § 23–605. Disposing to drunk.—*Any person who sells, gives or dispenses* any alcoholic or intoxicating liquor to another person who is intoxicated or apparently intoxicated shall be guilty of a misdemeanor. (1977). (Emphasis added.)

Thus, as to the Watsons, this case must be remanded to the district court for application of the rule of *Bergman v. Henry* noted above.

---

1. I.C. § 23–808 (Supp.1988).

## II.

■ The trial court also erred in granting summary judgment to the Coopers on the basis that they exercised no control over the operation of the tavern, even though Marilyn Cooper was the record holder of the Rainbow Inn tavern's liquor license. This Court has recently and forcefully reaffirmed that the right to operate a tavern pursuant to a liquor license is personal to the record holder of the license. In *Uptick Corp. v. Ahlin*, 103 Idaho 364, 647 P.2d 1236 (1982), Justice Bakes, speaking for a four-judge majority wrote:

> The purpose of the Retail Sale of Liquor-by-the-Drink Act, I.C. §§ 23–901 *et seq.*, is to protect the health, welfare and safety of the people of the State of Idaho and promote and encourage temperance in the use of alcoholic beverages. (citations omitted). A person wishing to obtain a liquor license must submit an application to the Department of Law Enforcement, setting forth the applicant's qualifications and statements and information relative to the premises where the liquor is to be sold. I.C. § 23–905. Only after investigation of the applicant and a determination that the contents of the application are true, that the applicant is qualified and that the premises are suitable, may the director, in his discretion, issue a license. I.C. § 23–907. *This application procedure and the procedure to be followed in transferring liquor licenses, see I.C. § 23–908, makes it clear that the legislature painstakingly attempted to ensure that the department have complete control over who may own a liquor license, and that only persons who could be depended upon to advance the policies of the act were entitled to a license.*
>
> In *Nampa Lodge No. 1389 B.P.O.E. v. Smylie*, 71 Idaho 212, 229 P.2d 991 (1951), *this Court recognized the personal nature of liquor licenses and stated that a license is a privilege personal to the licensee. See also McBride v. Hopper*, 84 Idaho 350, 372 P.2d 401 (1962). The right to sell spirits by retail is conferred upon the director's judgment of the ability and qualifications of the applicant to faithfully discharge the duties imposed on him or her. (citations omitted). Finally, the personal nature of the privilege to sell liquor by the drink can most clearly be seen upon reading I.C. § 23–908, which states in pertinent part that, "[e]very license issued under the provisions of this act is separate and distinct and *no person except the licensee therein named except as herein otherwise provided shall exercise any of the privileges granted thereunder.*" The right to renew is included among the privileges appurtenant to a liquor license and is a privilege which is to be exercised exclusively by the named licensee. *To hold otherwise would enable persons who have not subjected themselves to the scrutiny and approval of the director of the Department of Law Enforcement to acquire an interest in a license and circumvent the policy of the act that only qualified persons own licenses and exercise rights thereunder.*

103 Idaho at 368–369, 647 P.2d at 1240–41 (emphasis added).

Thus, clear and unequivocal language of *Uptick Corp.* establishes that only named licensees may operate under the authority of the license. There is nothing in the record, and the Coopers have made no claim, to sustain a finding that Mrs. Cooper transferred her liquor license to the Watsons pursuant to the requirements of Idaho statutes. The relevant statutes must be complied with. *McBride, supra.* Thus, Mrs. Cooper cannot escape responsibility for the activities of a tavern which is operated under a license issued to her on her application.

We find support for this position from other jurisdictions. *Alesna v. Legrue*, 614 P.2d 1387 (Alaska 1980), is very close factually to the instant case. There the court reviewed an appeal of a summary judgment dismissing a complaint against the licensees of a restaurant and bar. The trial court held that the licensees were not vicariously liable for acts of employees on the premises. The appellate court reversed and concluded that the licensees may be held civilly liable for violation of Alaska's

liquor laws. A previous decision to the contrary was overruled. That case, cited to and relied upon by Judge Magnuson, had reasoned that it was unfair to hold a person civilly liable for acts which that person could not control. *Barton v. Lund*, 563 P.2d 875 (Alaska 1977). The *Alesna* court in overruling stated that:

> [I]t is not unfair to hold a licensee responsible for the establishment's operation even though the licensee does not have actual control of the day-to-day functions. The licensee, whether or not in actual control, derives benefits from the enterprise. The licensee is free to choose whether or not to assign those benefits and to relinquish operational control. *In a business so fraught with public interests, a licensee should not be entitled to the benefits of the enterprise, yet be relieved of the responsibilities by merely contracting them away. Without approval of the board to a transfer, there is no assurance that the purchaser will be responsible.*

*Alesna v. Legrue, supra*, 614 P.2d at 1391 (emphasis added).[2]

The Illinois Court of Appeals, applying similar reasoning, has reached the same result. The court noted that an Illinois statute provided that a liquor license is a purely personal privilege and could not be transferred without statutory compliance:

> We therefore conclude, as a matter of law, that a liquor licensee cannot, by leasing the dram shop and allowing his lessee to operate the dram shop under lessor's liquor license, (an act which is contrary to law), divest himself of the obligation to properly control the operation of the dram shop. Under the facts alleged in the instant case we conclude that defendant Amato, irrespective of any agreement with Galloway, was under a duty to control the Three Crown Room so long as it was operated under his (Amato's) liquor license, with his specific sanction.

It is clear, therefore, that the trial court was in error in granting the motion for summary judgment on the negligence count plaintiff's complaint ...

*Hix v. Amato*, 50 Ill.App.3d 761, 8 Ill.Dec. 762, 767, 365 N.E.2d 1148, 1153 (1977); *accord, Woodward v. Pro Del Corp.*, 64 Ill. App.3d 684, 21 Ill.Dec. 520, 381 N.E.2d 847 (1978); *see also Ashbaugh v. Williams*, 106 N.M. 598, 599, 747 P.2d 244, 245 (1988) ("There is a rational basis for full liability of a licensee who might otherwise insulate himself or herself from accountability through a lease that passes profits to the lessor/licensee from an irresponsible lessee."); *Santiago v. Allen*, 449 So.2d 388 (Fla.App.1984). The Coopers have cited us to no contrary authority and our research has disclosed none. Therefore, the order granting summary judgment to the Coopers is also reversed, and this cause remanded to the trial court for proceedings consistent with this opinion.

Reversed and remanded with directions. Costs to appellants.

HUNTLEY and JOHNSON, JJ. concur.

JOHNSON, Justice, concurring specially.

I concur in the opinion of Justice Bistline so far as it goes. However, I would apply the decision retroactively, as I suggested should be done in *Bergman v. Henry*, 115 Idaho 259, 261–62, 766 P.2d 729, 732–33 (1988) (Johnson, J., concurring specially).

BAKES, Chief Justice, concurring in part and dissenting in part:

I concur in Part I of the majority opinion which holds that the trial court's grant of summary judgment in favor of the Watsons, who were the owners/operators of the tavern and who allegedly served the excessive alcohol to the tortfeasor Perry Bisher, must be reversed and the case remanded

---

**2.** Alaska has a statute similar to our Idaho Code § 23–908. The statute, AS 04.10.180 provides: *Financial interest in personal superintendence.* No person other than the licensee shall have a direct or indirect financial interest in the business for which the license is issued. The licensee is solely responsible for the lawful conduct of the business licensed under this title, except as provided in this title.

for further proceedings. That result follows from our recent decision in *Bergman v. Henry*, 115 Idaho 259, 766 P.2d 729 (1988).

As to Part II, however, I respectfully dissent. Although the majority correctly recognizes that the issue in Part II is "whether the trial court erred in granting summary judgment to the Coopers on the basis that the Coopers exercise no control over the operation of the Rainbow Inn," *ante* at 376, 775 P.2d at 1218, it then errs in its analysis of the issue. As the affidavits of the Coopers and other evidence filed with the trial court show, the Coopers sold the Rainbow Inn on February 21, 1984, retaining no power to control the Watsons' activities subsequent to the sale. Under that scenario, the Watsons then took possession of the Rainbow Inn and its inventory, hired their own employees, and commenced operation of the business as its owners. They continued to own and operate the business, free of the Coopers' control or supervision, through May 13, 1984, the date of the Bisher/Lloyd accident spawning this action. Accordingly, under the actual terms of the sale, and consistent with the Watsons' *modus operandi*, the Coopers had no opportunity to prevent the harm alleged in the appellants' complaint. They simply had no connection with the Rainbow Inn after its sale on February 21, 1984. The business had been sold and the Coopers exercised no control, either constructively or legally, over the Watsons subsequent to the sale. Therefore, there is no legal basis for holding the Coopers liable and the trial court's grant of the Coopers' summary judgment motion should be affirmed.

Nevertheless, the majority purports to hold both Mr. and Mrs. Cooper liable simply because Mrs. Cooper continued to hold the liquor license after the Rainbow Inn was sold, stating, *ante* at 377, 775 P.2d at 1219, that "Mrs. Cooper cannot escape responsibility for the activities of a tavern which is operated under a license issued to her on her application." The majority further states, *ante* at 377, 775 P.2d at 1219, "that the right to operate a tavern pursuant to a liquor license is personal to the record holder of the license." Even though Mrs. Cooper's license was only issued to her, and even though the majority states that a liquor license is personal to the holder of record, the majority, without any explanation, reverses the summary judgment as to both Mr. and Mrs. Cooper, apparently finding *both* Mr. and Mrs. Cooper liable under Mrs. Cooper's license.[3] The majority holds Mr. Cooper liable notwithstanding its conclusion that "only named licensees [here Mrs. Cooper] may operate under the authority of the license." *Ante* at 377, 775 P.2d at 1219.

Neither theory for holding the Coopers liable advanced by the majority is supported by the law or the facts: (1) the "control" theory fails because, as is explained above, the Coopers exercised no actual control over the Watsons' actions subsequent to the sale on February 21, 1984; and (2) holding Mr. Cooper liable on Mrs. Cooper's liquor license is fatally flawed because, as the majority acknowledges, "the right to operate a tavern pursuant to a liquor license is personal to the record holder of the license," which here was Mrs. Cooper only. If, as the majority states, *"Mrs. Cooper* cannot escape responsibility for the activities of a tavern which is operated under a license issued to *her* on *her* application," *ante* at 377, 775 P.2d at 1219 (emphasis added), then upon what basis does the majority reverse the summary judgment as to Mr. Cooper? Since the majority reverses the summary judgment

3. The court's order granting the Coopers' motion for summary judgment reads in part as follows:

"This matter came before the court for hearing on defendant Marilyn J. Cooper and defendant Robert Cooper's motion for Summary Judgment....

....

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the claims and causes of action asserted by the plaintiff in his capacity as the personal representative of the Estate of Cori Lloyd on behalf of the minor children of Cori Lloyd, Alan Lloyd and Alicia Lloyd, against defendant Marilyn J. Cooper and defendant Robert Cooper are hereby dismissed with prejudice."

as to both Mr. and Mrs. Cooper's liability, the legal rationale has to be something other than the claim that liability is imposed on the person who is "the record holder of the license," because Mr. Cooper is not the "record holder of the license." Accordingly, neither theory for holding the Coopers liable under this scenario is based in law or fact and the trial court's grant of the summary judgment as to both Mr. and Mrs. Cooper should be affirmed.

SHEPARD, Justice *, dissenting.

I agree with that portion of the Bakes, C.J. opinion which dissents. I further dissent and disagree with what I view as an unnecessarily truncated discussion of the issues.

The issue of dram shop liability in Idaho was addressed in *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969). There a majority of the Court rejected the assertion that common law dram show liability should be imposed in Idaho in the absence of a specific statute. The large portion of the two dissenting opinions in *Meade* were devoted to the argument that an early dram shop statute should be considered as still then effective.

Some eleven years later in *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980), this Court, with different personnel, carved a narrow exception to the holding of *Meade v. Freeman*. The Court in *Alegria* carefully noted that plaintiffs alleged "that defendants sold, served and dispensed alcoholic beverages to Payonk, notwithstanding that defendants knew or should have known that Payonk was under the legal drinking age of nineteen years ..." and knew that he was actually, apparently, and obviously intoxicated. The Court further noted, "the narrow issue presented is whether in this state the sale of alcoholic beverages by a licensed vendor of such beverages to an actually apparently and obviously intoxicated person known to be a minor can be a contributing actual and proximate cause of the damage ..." In my view, the opinion in *Alegria* makes clear through its emphasis on the sale of intoxi-

cants *to a minor*, that it constitutes an exception to the otherwise rule of *Meade v. Freeman*.

This Court next had the opportunity to address the question of common law dram shop liability in Idaho in the case of *Estates of Braun v. Cactus Pete's, Inc.*, 108 Idaho 798, 702 P.2d 836 (1985). The Court there reversed a decision of the Court of Appeals which would have purported to expand common law dram shop liability in Idaho. Therein this Court refused to so expand dram shop liability, holding that such decision was not necessary since the case in actuality presented only a conflicts of law question; *i.e.*, did the law of Idaho or Nevada control the disposition of the case. It was held that the law of Nevada controlled, and Nevada law did not recognize common law dram shop liability.

The Court next addressed the question of dram shop liability in Idaho in *Bergman v. Henry*, 115 Idaho 259, 766 P.2d 729 (1988). The majority of the Court in *Bergman* appears to have relied upon the decision of the Court of Appeals in *Estates of Brawn v. Cactus Pete's, Inc.*, 108 Idaho 798, 702 P.2d 836 (1985), which as previously noted, was later overruled by this Court. Of more importance, however, is the concluding paragraph of the "majority" opinion wherein it is stated that Bergman "finally, given the fact that the Idaho legislature subsequently has passed a dram shop act, today's ruling only shall apply prospectively, that is, only to this case and other causes of action arising subsequent to September 20, 1988, which have not yet come to final judgment."

In *Bergman v. Henry*, it is well noted in the dissenting opinion of Bakes, J.:

The Court's opinion does not state whether or not it is overruling *Meade v. Freeman, supra*. The majority opinion merely states, "We see no reason for distinguishing between serving liquor to a minor and an adult when either is obviously intoxicated." Does that statement mean that *Meade* is overruled?

* SHEPARD, J., sat and participated fully in the decision and opinion prior to his death.

115 Idaho at 264, 766 P.2d at 734. The dissent of Bakes, J. goes on to state:

> While the Court's opinion recognizes that the Idaho legislature passed a "dram shop act," I.C. § 23–808, effective April 3, 1986, it fails to recognize that that legislation is more narrowly drafted and tailored than the Court's broad statement that "[w]e see no reason for distinguishing between serving liquor to a minor and an adult when either is obviously intoxicated."

115 Idaho at 264, 766 P.2d at 734.

I suggest that the majority in today's opinion is internally inconsistent. The majority first suggests that it makes no difference who held the actual license, and holds the alleged actual dispenser to liability. [In the next breath the majority tells us that the license is all important, and will be used to determine the potential liability of the license holder.]

I next suggest that the majority citations of I.C. §§ 23–603 and 23–605 are inapplicable to the instant case. Both statutes are precisely worded to make criminal the actual giving or dispensing of alcoholic beverages to minors or drunks. I view both statutes as carefully tailored, and I know of no rule of law which would apply vicarious criminal liability to the Coopers who had no part of such alleged service to a drunk, and in fact had no part of the operation of the tavern.

As correctly noted by today's majority opinion, the facts of *Alesna v. LeGrue*, 614 P.2d 1387 (Alaska 1980), are similar to the instant case. The Alaska Supreme Court did in deed hold that licensees may be held civilly liable for violation of Alaska's liquor laws. However, what today's majority does not tell us about *Alesna* is that that decision was based on a specific Alaska statute providing that a liquor "licensee is solely responsible for the lawful conduct of the business licensed under this title ..." Today's majority does not base its decision on any statute similar to that relied upon by the Alaska court in *Alesna*.

In 1986, rightly or wrongly, our legislature made a decision to codify dram shop type of liability in Idaho. I.C. § 23–808 provides as follows:

(1) The legislature finds that it is not the furnishing of alcoholic beverages that is the proximate cause of injuries inflicted by intoxicated persons and it is the intent of the legislature, therefore, to *limit* dram shop and social host liability; provided, that the legislature finds that the furnishing of alcoholic beverages *may* constitute a proximate cause of injuries inflicted by intoxicated persons under the circumstances set forth in subsection (3) of this section.

. . . .

(3) A person who has suffered injury, death or any other damage caused by an intoxicated person, may bring a claim or cause of action against any person who sold or otherwise furnished alcoholic beverages to the intoxicated person, only if;

(a) The intoxicated person was younger than the legal age for the consumption of alcoholic beverages ... or

(b) The intoxicated person was obviously intoxicated at the time the alcoholic beverages were sold or furnished, and *the person who sold or furnished* the alcoholic beverages knew or ought reasonably to have known that the intoxicated person was obviously intoxicated.

. . . .

(5) No claim or cause of action may be brought under this section against a person who sold or otherwise furnished alcoholic beverages to an intoxicated person unless the person bringing the claim or cause of action notified the person *who sold or otherwise furnished* alcoholic beverages to the intoxicated person within one hundred eighty (180) days from the date the claim or cause of action arose by certified mail that the claim or cause of action would be brought. (Emphasis added.)

In my view, by the enactment of that legislation the legislative branch of government has made a conscious decision to occupy the field of dram shop liability which previously has been an arena for speculation and indecision caused by the previous

decisions of this Court. It is also clear to me that a dram shop cause of action is now limited to the situation where a minor has been served, or a person who is obviously intoxicated, and in any event that liability is restricted to "the person who sold or furnished the alcoholic beverages." I suggest that this Court for the past twenty years has engaged in a diversity of opinions as to the most desirable social policy in claims against vendors who dispensed alcoholic beverages to tort feasors. In my view, the legislature has now made clear what the public policy of the state of Idaho is regarding the liability of dispensers of alcoholic beverages. In my view, today's opinion of the majority is a giant step seeking to find potential liability upon otherwise innocent people. If the trend of the majority continues, I suggest that retail and wholesale vendors of beer and wine, together with the State Liquor Dispensary, had best look to the provisions of their liability insurance policies, for assuredly if today's decision stands, dram shop type liability will be further expanded as such cases are brought to this Court. Perhaps the ultimate will be achieved by this Court when distillers and brewers will be found to have a similar liability on the basis that they knew or should have known that their spirits are ultimately being dispensed by bartenders or liquor stores without sufficient attention to the age or sobriety of their customers.